## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
GOLDEN KRUST PATTIES, INC.,                    )
GOLDEN KRUST FRANCHISNG, INC.,                 )
d/b/a GOLDEN KRUST CARIBBEAN                    )
BAKERY & GRILL,                                )         Civil Action No.:
                                               )
                      Plaintiffs,              )         **JUDGE:**
                                               )
v.                                             )
                                               )
MARILYIN BULLOCK and                           )
MARILYN'S PATTIES, INC., d/b/a                 )
GOLDEN KRUST BAKERY                            )
                                               )
                      Defendants.              )
------------------------------------------------------------X
```

### COMPLAINT

The Plaintiffs, GOLDEN KRUST PATTIES, INC. and GOLDEN KRUST FRANCHISING INC., d/b/a GOLDEN KRUST CARIBBEAN BAKERY & GRILL (hereinafter, collectively, "Golden Krust" or the "Plaintiffs"), by and through their attorneys, CORBALLY, GARTLAND & RAPPLEYEA, LLP, as and for their Complaint against the Defendants, MARILYN BULLOCK and MARILYN'S PATTIES, INC., d/b/a GOLDEN KRUST BAKERY (hereinafter, collectively, the "Defendants"), hereby state and allege the following:

### PARTIES

1.      At all times relevant herein, the Plaintiff, GOLDEN KRUST PATTIES, INC. (hereinafter, individually, "Golden Krust Patties"), was and still is a New York Corporation with its principal place of business located at 1381 East Gunhill Road, Bronx, New York 10469.

2.    At all times relevant herein, the Plaintiff, GOLDEN KRUST FRANCHISING INC., d/b/a GOLDEN KRUST CARIBBEAN BAKERY & GRILL (hereinafter, individually, "Golden Krust Franchising"), was and still is a New York Corporation with its principal place of business located at 1381 East Gunhill Road, Bronx, New York 10469.

3.    At all times relevant herein, he Plaintiffs share common shareholders, officers and directors.

4.    Golden Krust Franchising is the manufacturer and distributor of Caribbean-styled food products and the national franchisor of Golden Krust Caribbean Bakery & Grill quick service restaurants.

5.    Upon information and belief, at all times relevant herein, the Defendant, MARILYN BULLOCK (hereinafter, individually, "Bullock"), was and still is an individual residing in the County of Queens, State of New York.

6.    Upon information and belief, at all times relevant herein, the Defendant, MARILYN'S PATTIES, INC., d/b/a GOLDEN KRUST BAKERY (hereinafter, individually, "Marilyn's Patties") was and still is a New York Corporation with its principal place of business located at 1717 Dutch Broadway, Elmont, New York 11003.

7.    Upon information and belief, at all times relevant herein, Bullock is the sole shareholder, officer, and director of Marilyn's Patties.

**JURISDICTION AND VENUE**

8.    This is an action for trademark infringement, false designation of origin, unfair competition and dilution action arising under the Trademark Act of 1946, as amended [15 USC § 1051, et seq.], as well as for violations of the common law of the State of New York.

2

9.     This Court has jurisdiction over this action pursuant to 28 USC §§1331 and 1338 and venue is proper in this District pursuant to 28 USC §1391.

## FACTS COMMON TO ALL COUNTS

10.     Golden Krust Patties is the owner of the following trademarks (hereinafter the "Golden Krust Trademarks"), which are registered on the principal register of the United States Patent and Trademark Office: (a) GOLDEN KRUST bearing Serial # 78444256; (b) GOLDEN KRUST CARIBBEAN BAKERY & GRILL bearing Serial # 78424848, and (c) GOLDEN KRUST PATTIES, bearing Serial #76340524.  A copy of the registrations for the Golden Krust Trademarks is annexed hereto as **Exhibit A**.

11.     Golden Krust Franchising is the exclusive world-wide licensee of all of the Golden Krust Trademarks.

12.     The registrations for the Golden Krust Trademarks are valid and subsisting and constitute prima facie evidence of the validity of the marks and of the Plaintiffs' exclusive right to control the use of the trademarks on an in connection with the goods recited in the registration certificates.

13.     Since 1989, prior to the registration of the Golden Krust Trademarks, Golden Krust Patties manufactured and sold Caribbean food products under the names "Golden Krust" and "Golden Krust Patties."

14.     Since long prior to the acts of the Defendants complained herein, the Plaintiffs have used the Golden Krust Trademarks in connection with the development, franchising, and operation of Golden Krust Caribbean Bakery & Grill quick service restaurants and the manufacture, distribution, marketing, and sale of Caribbean-styled food products.

3

15.     At all times relevant herein, the Plaintiffs have expended a substantial amount of time, effort, and money in the promotion and advertisement of goods and services offered and sold under the Golden Krust Trademarks.

16.     As the franchisor of Golden Krust Caribbean Bakery & Grill restaurants, Golden Krust Franchising has developed a proprietary system including the Golden Krust Trademarks, proprietary trade dress and other proprietary processes, materials, manuals and rights relating to the development, promotion, franchising, and operation of its Caribbean quick service restaurants.

17.     As a result of the Plaintiffs' advertising and promotional efforts under its registered trademarks, Golden Krust Caribbean Bakery & Grill restaurants have enjoyed commercial success and substantial goodwill so that the Golden Krust name and Golden Krust Trademarks are recognized nationally and have acquired a secondary meaning so that the public has come to associate the Golden Krust name and Golden Krust Trademarks exclusively with the Plaintiffs' Caribbean food products and quick service restaurants.

18.     In addition to the Golden Krust name and Golden Krust Trademarks, the Plaintiffs have developed and has a proprietary interest in certain color schemes, designs, awnings and decor, all constituting the proprietary "trade dress" of Golden Krust Caribbean Bakery & Grill restaurants.

19.     Similarly, the Plaintiffs are the owners of a unique and proprietary system for the development and operation of Golden Krust Caribbean Bakery and Grill quick service restaurants (hereinafter the "Golden Krust System").

20.     On or about March 10, 2006, Golden Krust entered into a franchise agreement (hereinafter the "Franchise Agreement") with the Defendants, under which the Defendants were authorized to operate a Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003.   A copy of the Franchise Agreement is annexed hereto as **Exhibit B**.

21.     Pursuant to the Franchise Agreement, the Defendants were authorized to use the Golden Krust name, Golden Krust Trademarks, and Golden Krust System in the development, promotion, and operation of their Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003.

22.     Pursuant to the Franchise Agreement, the Defendants were required to comply with the Golden Krust System, including, but not limited to, selling exclusively products approved by and manufactured by the Plaintiffs.

23.     Pursuant to the Franchise Agreement, the Defendants were prohibited from engaging in any dishonest or unethical conduct, which may adversely affect the reputation of Golden Krust name, the Golden Krust Trademarks, or the Golden Krust System.

24.     Any violation of the aforementioned provisions of the Franchise Agreement authorized Golden Krust to immediately terminate said Agreement and the Defendants' rights thereunder.

25.     Upon any such termination of the Franchise Agreement, the Defendants were prohibited from using the Golden Krust System or displaying the Golden Krust name and/or Golden Krust Trademarks.

26.     As partial consideration for the Defendants' rights thereunder, the Franchise Agreement contained a Covenant Not to Compete (hereinafter the "Covenant Not to Compete"), under which the Defendants were forbidden to have any direct or indirect interest in any bakery, grill, restaurant, or food service business within ten (10) miles of the Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003, or within five (5) miles of any other Golden Krust Caribbean Bakery & Grill.

27.     The Covenant Not to Compete was and still is applicable during the term of the Franchise Agreement and for a period of two (2) years following the termination of the Franchise Agreement.

28.     On or about April 1, 2013, the Plaintiffs discovered that the Defendants were selling a competitor's products at its Golden Krust franchise in Elmont, New York and intentionally mis-labeled said products in Golden Krust branded packaging.

29.     On April 2, 2013, as a result of the Defendants' blatant and material breaches of the Franchise Agreement, the Plaintiffs notified the Defendants that the Franchise Agreement was terminated effective immediately pursuant to the terms of said Agreement.  A copy of the notice of termination of the Franchise Agreement is annexed hereto as **Exhibit C**.

30.     The aforementioned notice of termination demanded that the Defendants immediately cease and desist the operation of its Golden Krust franchise located in Elmont, New York.

31.     The notice of termination also demanded that the Defendants immediately remove from its Golden Krust franchise location any advertising, signage, or structure that featured or contained the Golden Krust name or the Golden Krust Trademarks.

32.     The notice of termination also reminded the Defendants of the restrictions set forth in the Covenant Not to Compete.

33.     Notwithstanding the aforementioned notice of termination, the Defendants continue to defiantly operate their Golden Krust franchise in Elmont, New York and continue to use the Golden Krust name, the Golden Krust Trademarks, and the Golden Krust System.

34.     The Defendants have continued to willfully and purposefully advertise and promote their bakery and grill in such a way as to create a false impression among the public that said bakery and grill is associated and/or affiliated with the Plaintiffs and that it is authorized to sell Golden Krust Caribbean styled food products and related products.

35.     The Defendants are engaging in an overall pattern of intentional deceit and unfair competition designed to pass off their bakery and grill and products as those of the Plaintiffs and to trade on the reputation and good will of the Plaintiffs and cause confusion, mistake and deception as to the source or affiliation of their products and bakery and grill.

36.     Due to the Defendants' conduct as alleged herein above, purchasers and prospective purchasers of the Defendants' products are likely to be confused into believing, contrary to fact, that the Defendants' products and bakery and grill originate with or are authorized by the Plaintiffs and that the Defendants are a licensed and franchised Golden Krust Caribbean Bakery & Grill, or otherwise sponsored by or associated with the Plaintiffs, the Golden Krust name, Golden Krust Trademarks, and/or Golden Krust System.

37.     The Defendants' acts complained of herein are likely to dilute the distinctive quality of the Golden Krust Trademarks.

38.     As set forth above, the Plaintiffs have made demands that the Defendants discontinue and cease their infringing acts; however, the Defendants have refused to cease and/or acknowledge their unauthorized and unlawful conduct.

## COUNT I

## BREACH OF THE COVENANT NOT TO COMPETE

39.     The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "38" of this Complaint as if set forth herein at length.

40.     The aforesaid acts of the Defendants constitute a breach of the Covenant Not to Compete.

41.     By reason of the Defendants' breach of the Covenant Not to Compete, as alleged herein, the Plaintiffs have suffered, are suffering and will continue to suffer irreparable damage and, unless the Defendants are restrained from continuing its wrong acts, the damage to the Plaintiffs will increase.

42.     The Plaintiffs have no adequate remedy at law.

## COUNT II

## FEDERAL TRADEMARK INFRINGEMENT

43.     The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "42" of this Complaint as if set forth herein at length.

44.     The aforesaid acts of Defendants constitute infringement of the Golden Krust Trademarks in violation of Section 32(1) of the Trademark Act of 1946, as amended, 15 U.S.C.A. §114(1).

45.     Upon information and belief, the aforesaid acts were undertaken willfully and with the deliberate intention of causing confusion, mistake or deception.

46.     By reason of the acts of the Defendants alleged herein, the Plaintiffs have suffered, are suffering and will continue to suffer irreparable damage and, unless the Defendants are restrained from continuing its wrong acts, the damage to the Plaintiffs will increase.

47.     The Plaintiffs have no adequate remedy at law.

## COUNT III

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER §43(a) OF THE LANHAM ACT

48.     The Plaintiff repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "47" of this Complaint as if set forth herein at length.

49.     The aforesaid acts of Defendants are likely to cause confusion, mistake, or deception among purchasers and potential purchasers of Golden Krust Caribbean styled food products and related products at the bakery and grill operated by the Defendants herein by reason of the Defendants displaying the Golden Krust name and Golden Krust Trademarks so as to cause said purchasers or potential purchasers to believe that the products sold within the Defendants' bakery and grill originates or is in some way connected with, approved, or endorsed by the Plaintiffs.

50.     The confusion, mistake or deception referred to herein arises out of the aforesaid acts of the Defendants, which constitute false designation of origin and unfair competition in violation of §43(a) of the Trademark Act of 1946, as amended, 15 U.S.C.A. §1125(a).

51.     Upon information and belief, the aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake or deception.

52.     By reason of the aforementioned acts of the Defendants alleged herein, the Plaintiffs have suffered, are suffering and will continue to suffer irreparable damage and, unless said Defendants are restrained from continuing these wrongful acts, the damage to plaintiff will increase.

53.     The Plaintiffs have no adequate remedy at law.

## COUNT IV

## DILUTION UNDER §43(c) OF THE LANHAM ACT

54.     The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "53" of this Complaint as if set forth herein at length.

55.     The Defendants' unauthorized use of the Golden Krust name and Golden Krust Trademarks will tend to and, in fact, does dilute the distinctive quality of said name and marks, and will diminish and destroy the public's association of said name and marks with the Plaintiffs and is likely to cause dilution by blurring or dilution by tarnishment in violation of 15 U.S.C.A. §1125(c).

56.     By reason of the acts of the Defendants as alleged herein, the Plaintiffs have suffered, are suffering, and will continue to suffer irreparable damage and, unless the Defendants are restrained from continuing their wrongful acts, the damage will be increased.

57.     The Plaintiffs have no adequate remedy at law.

## JURY DEMAND

58.     The Plaintiffs hereby request trial by jury on all issues so triable.

**WHEREFORE**, the Plaintiffs demand that:

1.      The Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under them be temporarily, preliminarily and, thereafter, permanently enjoined and restrained from:

      a.      opening, operating, owning, managing, associating with, or otherwise controlling any restaurant or food service business at 1717 Dutch Broadway, Elmont, New York 11003;

      b.      opening, operating, owning, managing, associating with, or otherwise controlling any restaurant or food service business within ten (10) miles of the Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003; and

      c.      opening, operating, owning, managing, associating with, or otherwise controlling any restaurant or food service business within five (5) miles of any other Golden Krust Caribbean Bakery & Grill franchise.

2.      The Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under them be temporarily, preliminarily and, thereafter, permanently enjoined and restrained from:

      a.      using or displaying in any manner the registered trademarks of the Plaintiff, GOLDEN KRUST PATTIES, INC., specifically: (1) GOLDEN KRUST ®; (2) GOLDEN KRUST CARIBBEAN BAKERY AND GRILL ®, (3) GOLDEN KRUST PATTIES ® (hereinafter the "Golden Krust Trademarks"), related design marks or any colorable imitation thereof at 1717 Dutch Broadway, Elmont, New York 11003, or at any other location;

        b.      using in any manner the Golden Krust name or Golden Krust Trademarks in connection with the Defendants' sale of Caribbean-styled food products or any related products in such a manner that is likely to create the erroneous belief that said products are authorized by, sponsored by, franchised by, or some way associated with the Plaintiffs;

        c.      creating, displaying, erecting or printing any signage at or on any building or establishment which signage incorporates the Golden Krust name and/or Golden Krust Trademarks;

        d.      using, disseminating or distributing any advertising, menus or other promotional materials that bear the Golden Krust name and/or Golden Krust Trademarks or whose appearance so resembles the Plaintiffs' intellectual property that it is likely to create confusion, mistake or deception among the general public; and

        e.      otherwise engaging in any other acts or conducts which would cause consumers to erroneously believe that the Defendants' goods or services are somehow sponsored by, authorized by, franchised or licensed or in any other way associated with the Plaintiffs and/or Golden Krust.

3.      The Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under them be temporarily, preliminarily and thereafter, permanently enjoying and restrained from diluting distinctive quality of the Golden Krust Trademarks; and

4.      Such other and further relief as the Court may deem just or appropriate.

Dated: Poughkeepsie, New York
       April 10, 2013

                                CORBALLY, GARTLAND and RAPPLEYEA, LLP

                                By: _____
                                     William W. Frame (WF9371)
                                     Vincent L. DeBiase (VD9716)
                                     Attorneys for Plaintiff
                                     35 Market Street
                                     Poughkeepsie, NY  12601
                                     (845) 454-1110


TO:    MARILYN BULLOCK
       3238 215th Street
       Bayside, NY 11361

       MARILYN'S PATTIES, INC., d/b/a GOLDEN KRUST BAKERY
       68 South Gate Rd.
       Valley Stream, NY 11581

       1717 Dutch Broadway
       Elmont, NY 11003

13



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Apr 10 05:02:46 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: _____  OR  Jump  to record: _____  **Record 3 out of 13**

---

| TSDR | ASSIGN Status | TTAB Status |  *( Use the "Back" button of the Internet Browser to return to TESS)*

# GOLDEN KRUST

| | |
|---|---|
| **Word Mark** | **GOLDEN KRUST** |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Restaurant franchising; franchising, namely consultation and assistance in business management, organization and promotion; franchising, namely, offering technical assistance in the establishment and/or operation of restaurants. FIRST USE: 19950100. FIRST USE IN COMMERCE: 19950100 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78422256 |
| **Filing Date** | May 20, 2004 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 19, 2005 |
| **Registration** | |

| | |
|---|---|
| **Number** | 2966992 |
| **Registration Date** | July 12, 2005 |
| **Owner** | (REGISTRANT) Golden Krust Patties, Inc. CORPORATION NEW YORK 3958 Park Avenue Bronx NEW YORK 10457 |
| **Attorney of Record** | Glenn Spencer Bacal |
| **Prior Registrations** | 2007993;2166673;2651784 |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST
NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Apr 10 05:02:46 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [            ]   OR   Jump   to record: [          ]   **Record 2 out of 13**

---

TSDR   ASSIGN Status   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **GOLDEN KRUST** CARIBBEAN BAKERY & GRILL |
| **Goods and Services** | IC 043. US 100 101. G & S: restaurant services featuring caribbean style foods. FIRST USE: 19900100. FIRST USE IN COMMERCE: 19900100 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 01.05.04 - Sun with rays but neither partially exposed nor with facial features<br>26.01.06 - Circles, semi; Semi-circles<br>26.01.21 - Circles that are totally or partially shaded.<br>26.17.02 - Bands, wavy; Bars, wavy; Lines, wavy; Wavy line(s), band(s) or bar(s)<br>26.17.05 - Bands, horizontal; Bars, horizontal; Horizontal line(s), band(s) or bar(s); Lines, horizontal |
| **Serial Number** | 78424848 |
| **Filing Date** | May 25, 2004 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 21, 2005 |
| **Registration Number** | 2994753 |
| **Registration Date** | September 13, 2005 |

| Owner | (REGISTRANT) Golden Krust Patties, Inc. CORPORATION NEW YORK 3958 Park Avenue Bronx NEW YORK 10457 |
|---|---|
| Attorney of Record | Glenn Spencer Bacal |
| Prior Registrations | 2007993;2108240;2166673;2651784;AND OTHERS |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE CARIBBEAN BAKERY & GRILL APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Affidavit Text | SECT 15. SECT 8 (6-YR). |
| Live/Dead Indicator | LIVE |

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Apr 10 05:02:46 EDT 2013*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout Please logout when you are done to release system resources allocated for you.

Start List At: [          ] OR Jump to record: [          ] **Record 5 out of 13**

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | **GOLDEN KRUST** PATTIES |
| **Goods and Services** | IC 030. US 046. G & S: Meat, chicken, seafood and vegetable turnovers. FIRST USE: 19930801. FIRST USE IN COMMERCE: 19930801 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76340524 |
| **Filing Date** | November 20, 2001 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 27, 2002 |
| **Registration Number** | 2651784 |
| **Registration Date** | November 19, 2002 |
| **Owner** | (REGISTRANT) Golden Krust Patties, Inc. CORPORATION NEW YORK 3958 Park Avenue Bronx NEW YORK 10457 |
| **Attorney of Record** | Glenn Spencer Bacal |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PATTIES" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL-2(F) |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20121114. |
| **Renewal** | 1ST RENEWAL 20121114 |

Case 1:13-cv-02241-RLM    Document 1    Filed 04/12/13    Page 19 of 58 PageID #: 19

**Live/Dead**          LIVE
**Indicator**

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST

NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# FRANCHISE AGREEMENT (USA)

This agreement is between the Franchisor, **Golden Krust Franchising, Inc., d/b/a Golden Krust Caribbean Bakery & Grill**, a New York corporation (hereinafter referred to by the words Golden Krust, we, us, our and ours), and **Marilyn Bullock** (hereinafter referred to by the words Franchisee, you, your and yours).

## I.   PREAMBLES, ACKNOWLEDGMENTS AND GRANT OF FRANCHISE

### A.   PREAMBLES

Golden Krust has established a reputation for good, wholesome Caribbean bakery products, Jamaican Patties and West Indian cuisine and is engaged in franchising restaurants that produce and sell these and other products commercially with no compromises in quality under the name Golden Krust Caribbean Bakery & Grill.

Golden Krust Franchising, Inc. has developed, in connection with the operation of Golden Krust Caribbean Bakery & Grill Restaurants, a system of Caribbean cuisine recipes, baking processes, store operation procedures and identification schemes that may be changed, improved and further developed from time to time (hereinafter called "Golden Krust System" or "System").

Golden Krust Franchising, Inc. uses and displays to the public the name and marks "Golden Krust Caribbean Bakery & Grill" along with such other trademarks, signs, symbols and slogans as have been adopted for use with the Golden Krust System and may be developed and adopted for use with the System in the future (hereinafter collectively called "Golden Krust Marks" or "Marks").

Franchisee desires to make and sell Golden Krust food products and West Indian cuisine and use the Golden Krust Caribbean Bakery & Grill name at a location identified herein.

Both parties agree that the success of all Golden Krust Caribbean Bakery & Grill outlets is dependent on the continued good reputation of each restaurant; therefore adherence to the terms of this Agreement, prescribed for the purpose of maintaining a uniformly high standard of product and business quality, is of mutual importance.

### B.   ACKNOWLEDGMENTS

You acknowledge that you have read this Agreement and our Franchise Offering Circular and understand and accept the terms, conditions and covenants contained in this Agreement as being reasonably necessary to maintain our high standards of quality and

service and the uniformity of those standards at each Golden Krust Caribbean Bakery & Grill Restaurant and thereby to protect and preserve the goodwill of the Marks. You acknowledge that you have conducted an independent investigation of the business venture contemplated by this Agreement and recognize that, like any other business, the nature of the business conducted by a Golden Krust Caribbean Bakery & Grill Restaurant may evolve and change over time, that an investment in a Golden Krust Caribbean Bakery & Grill involves business risks and that your business abilities and efforts are vital to the success of the venture. Any information you acquire from other Golden Krust franchisees relating to their sales, profits or cash flows does not constitute information obtained from us, nor do we make any representation as to the accuracy of any such information. You acknowledge that, in all of their dealings with you, our officers, directors, employees and agents act only in a representative, and not in an individual, capacity. All business dealings between you and such persons as a result of this Agreement are solely between you and us. You further acknowledge that we have advised you to have this Agreement reviewed and explained to you by an attorney.

You represent to us, as an inducement to our entry into this Agreement, that all statements you have made and all materials you have submitted to us in connection with your purchase of the franchise are accurate and complete and that you have made no misrepresentations or material omissions in obtaining the franchise. We have approved of your purchasing a franchise in reliance upon all of your representations.

## C.   CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP

If you are at any time a corporation, limited liability company or partnership, you agree and represent that:

(1)   You will have the authority to execute, deliver and perform your obligations under this Agreement and are duly organized or formed and validly existing in good standing under the laws of the state of your incorporation or formation;

(2)   Your organizational documents or partnership agreement will recite that the issuance and transfer of any ownership interests in you are restricted by the terms of this Agreement, and all certificates and other documents representing ownership interests in you will bear a legend referring to the restrictions of this Agreement;

(3)   Exhibit A to this Agreement will completely and accurately describe all of your owners and their interests in you; and

(4)   Each of your owners at any time during the term of this Agreement will execute an agreement in the form that we prescribe undertaking to be bound jointly and severally by all provisions of this Agreement and any ancillary agreements between us and you that bind you. You and your owners agree to execute and deliver to us such revised Exhibits A as may be necessary to reflect any changes in the information contained therein and to furnish such other



information about your organization or formation as we may request.

**D.    GRANT OF FRANCHISE**

You have applied for a franchise to own and operate a Golden Krust Caribbean Bakery & Grill at 1717 Dutch Bdwy, Elmont 11003 (the "Premises"). Subject to the terms of and upon the conditions contained in this Agreement, we hereby grant you a franchise (the "Franchise") to operate a Golden Krust Caribbean Bakery & Grill (the "Restaurant") at the Premises, and to use the System in the operation thereof, for a term commencing on the date of this Agreement and expiring ten (10) years from such date, unless sooner terminated in accordance with Section XIII hereof or unless your lease for the Premises is terminated sooner.

You agree that you will at all times faithfully, honestly and diligently perform your obligations hereunder, continuously exert your best efforts to promote and enhance the Restaurant and not engage in any other business or activity that conflicts with your obligations to operate the Restaurant in compliance with this Agreement.  You may not operate the Restaurant from any site other than the Premises without our prior written consent.  If we consent to the Restaurant's relocation, we have the right to charge you for the expenses we incur in connection with the relocation.

**E.    RENEWAL**

You may renew the franchise for one (1) additional ten (10) year term on the terms and conditions contained in this agreement provided that the following conditions are first satisfied.

(1)    You have the right to remain in possession of the Premises for the renewal term;

(2)    You give us written notice of your intention to renew at least six (6) months but not more than twelve (12) months prior to the end of the term of this agreement or any renewal period;

(3)    You complete to our satisfaction such maintenance, refurbishing, renovating and remodeling of the Premises and its contents as we may reasonably require, no later than thirty (30) days before the end of the term of this agreement or any renewal period;

(4)    As of the end of the term of this agreement or any renewal period you are not in default under this or any other agreement with us or our affiliates and you have met all monetary obligations owing under such agreement throughout their terms and have otherwise substantially complied with your obligations under all such agreements;

(5)    You execute a new franchise agreement currently in effect for new franchises at the time of your renewal, and agree to the royalty and other terms therein.

F.    RIGHTS WE RESERVE

We (and our affiliates) retain the right in our sole discretion:

(1)    to establish, and grant to other franchisees the right to establish, Golden Krust Caribbean Bakery & Grill Restaurants anywhere other than at the Premises on such terms and conditions as we deem appropriate;

(2)    to sell products identified by the Marks through distribution channels other than Golden Krust Caribbean Bakery & Grill Restaurants (including, but not limited to, grocery stores and restaurants).

## II.    SITE SELECTION, LEASE OF PREMISES AND DEVELOPMENT OF RESTAURANT

### A.    SITE SELECTION

You acknowledge that you are responsible for locating a site for the Premises. Sites are subject to our approval. You acknowledge and agree that our recommendation or approval of the Premises, and any information regarding the Premises communicated to you, do not constitute a representation or warranty of any kind, express or implied, as to the suitability of the Premises for a Golden Krust Caribbean Bakery & Grill Restaurant or for any other purpose. Our recommendation or approval of the Premises indicates only that we believe that the Premises fall within the acceptable criteria for sites and premises. Application of criteria that have appeared effective with respect to other sites and premises may not accurately reflect the potential for all sites and premises, and, after our approval of a site, demographic and/or other factors included in or excluded from our criteria could change, thereby altering the potential of a site and premises. The uncertainty and instability of such criteria are beyond our control, and we will not be responsible for the failure of a site and premises we have recommended or approved to meet expectations as to potential revenue or operational criteria. You acknowledge and agree that your acceptance of the Franchise is based on your own independent investigation of the suitability of the Premises.

### B.    LEASE OF PREMISES

You are obligated to deliver a copy of the signed lease to us within fifteen (15) days after its execution. At our request, you agree that you will collaterally assign the lease for the Premises to us as security for your timely performance of all obligations under this Agreement and secure the lessor's consent to the collateral assignment. You acknowledge that our approval of the lease for the Premises does not constitute a guarantee or warranty, express or implied, of the successful operation or profitability of a Golden Krust Caribbean Bakery & Grill  operated at the Premises. Such approval indicates only that we believe that the Premises and the terms of the

lease fall within the acceptable criteria we have established as of the time of our approval. You further acknowledge that we have advised you to have an attorney review and evaluate the lease. Any material violation of the lease or sublease that is not cured after notice is given and within the applicable grace periods, as required by the terms of the sublease for the Premises, is a violation of this Franchise Agreement.

## C.   DEVELOPMENT OF RESTAURANT

You are responsible for developing the Restaurant. We will furnish you with mandatory drawings and specifications for a Golden Krust Caribbean Bakery & Grill, including requirements for dimensions, design, image, interior layout, decor, fixtures, equipment, signs, furnishings and color scheme at no cost to you. You are obligated to build or renovate your Restaurant with plans and specifications that have been pre-approved by us. You are obligated to submit construction plans and specifications to us for approval before construction of the Restaurant is commenced and, at our request, to submit all revised or as built plans and specifications during the course of such construction. Additionally, any contractor you hire to build or renovate your restaurant must be pre-approved by us.

At your request, we will assist you in developing the Restaurant by recommending and supervising contractors and architects and otherwise furnishing information to assist you in developing the Restaurant in accordance with our specifications and at your sole cost and expense. If we or our affiliates supervise the build-out and development of the Restaurant, you shall pay us a $7,500 development fee in connection with such services.

You agree, at your own expense, to do the following with respect to developing the Restaurant at the Premises:

(1)    secure all financing required to develop and operate the Restaurant;

(2)    obtain all building, utility, sign, health, sanitation, business and other permits and Licenses required to construct and operate the Restaurant;

(3)    construct all required improvements to the Premises and decorate the Restaurant in compliance with plans and specifications we have approved;

(4)    purchase or lease and install all required fixtures, furniture, equipment, furnishings and signs required for the Restaurant; and

(5)    purchase an opening inventory of authorized and approved food products, materials and supplies.

### D.   FIXTURES, FURNISHINGS, EQUIPMENT AND SIGNS

You agree to use in developing and operating the Restaurant only those fixtures, furnishings, equipment (including cash registers and computer hardware and software) and signs that we have approved for Golden Krust Caribbean Bakery & Grill Restaurants meeting our specifications and standards for quality, design, appearance, function and performance.  You agree to place or display at the Premises (interior and exterior) only such signs, emblems, lettering, logos and display materials that we approve from time to time.  You agree to purchase or lease approved brands, types or models of fixtures, furnishings, equipment and signs only from suppliers we have designated or approved (which may include us and/or our affiliates).

### E.   RESTAURANT OPENING

You agree not to open the Restaurant for business until:

(1)   we approve the Restaurant as developed in accordance with our specifications and standards;

(2)   pre-opening training has been completed to our satisfaction;

(3)   the initial franchise fee and all other amounts then due to us have been paid; and

(4)   we have been furnished with copies of all insurance policies required by this Agreement or in the Operations Manual, or such other evidence of insurance coverage and payment of premiums as we request or accept.

You agree to open the Restaurant for business within one hundred eighty (180) days after the execution of this Agreement and five (5) days after we notify you that the conditions set forth in this Paragraph have been satisfied.

## III.   FEES

### A.   INITIAL FRANCHISE FEE

You agree to pay us a nonrecurring initial franchise fee in the amount of Twenty Five Thousand Dollars ($25,000.00), which will be fully earned by us upon the execution of this Agreement. If you do not locate a site for the premises which has been approved by us within one (1) year of the execution this franchise agreement, we will refund to you $15,000.00 of your initial franchise fee. Otherwise, the initial franchise fee is non-refundable. We reserve the right to reduce or waive the initial franchise fee in certain instances and for certain franchisees, including family members and former employees.

**B.    ROYALTY**

You agree to pay us a weekly royalty ("Royalty") equal to 3% of the gross sales at the Premises or $250.00, whichever sum is greater.  Royalties are payable to us by our sweep via authorized electronic funds transfer (EFT) from your operating account not less than 24 hours after the weekly period ends.

**C.    DEFINITION OF "GROSS SALES"**

As used in this Agreement, the term "Gross Sales" means all revenue you derive from operating the Restaurant, including, but not limited to, all amounts you receive at or away from the Premises, and whether from cash, check, credit card or credit transactions, but excluding (1) all federal, state or municipal sales, use or service taxes collected from customers and paid to the appropriate taxing authority and (2) customer refunds, adjustments, credits and allowances actually made by the Restaurant.

**D.    INTEREST ON LATE PAYMENTS**

All amounts which you owe us will bear interest after their due date at the rate of one and one-half percent (1.5 %) per month or the highest contract rate of interest permitted by law, whichever is less.  You acknowledge that this Paragraph does not constitute our agreement to accept any payments after they are due or our commitment to extend credit to, or otherwise-finance your operation of, the Restaurant.  Your failure to pay all amounts when due constitutes grounds for termination of this Agreement, as provided in Section XIII hereof, notwithstanding the provisions of this Paragraph.

**IV.    A.    TRAINING**

Initial training in the Golden Krust System, including selection of equipment and suppliers, cooking processes, merchandising, marketing, accounting and basic management shall be provided by us for each person whose signature is on this Agreement and one (1) person designated as an employee/manager at times and places we shall designate.  We guarantee a minimum of five (5) days training, three (3) days prior to the opening of your Restaurant and two (2) days on premises at your Restaurant during opening.

**B.    GENERAL GUIDANCE**

We will advise you from time to time regarding the operation of the Restaurant based on reports you submit to us or inspections we make.  In addition, we will furnish guidance to you with respect to:

(1)    standards, specifications and operating procedures and methods utilized by Golden Krust Caribbean Bakery & Grill Restaurants;

GK·Fran·Agree·2004                    7

(2)     purchasing required fixtures, furnishings, equipment, signs, products, materials and supplies;

(3)     advertising and marketing programs including your Grand Opening;

(4)     employee training; and

(5)     administrative, bookkeeping and accounting procedures.

Such guidance will, at our discretion, be furnished in our operating manual ("Operations Manual"), bulletins or other written materials and/or during telephone consultations and/or consultations at our office or the Restaurant.

## C.     OPERATIONS MANUAL

We will loan to you during the term of this Agreement one (1) copy of our Operations Manual, consisting of such materials (including, as applicable, audiotapes, videotapes, magnetic media, computer software and written materials) that we generally furnish to franchisees from time to time for use in operating a Golden Krust Caribbean Bakery & Grill. The Operations Manual contains mandatory and suggested specifications, standards, operating procedures and rules ("System Standards") that we prescribe from time to time for the operation of a Golden Krust Caribbean Bakery & Grill and information relating to your other obligations under this Agreement and related agreements. The Operations Manual may be modified from time to time to reflect changes in System Standards. You agree to keep your copy of the Operations Manual current. In the event of a dispute relating to its contents, the master copy of the Operations Manual we maintain at our principal office will be controlling. You may not at any time copy, duplicate, record or otherwise reproduce any part of the Operations Manual. If your copy of the Operations Manual is lost, destroyed or significantly damaged, you agree to obtain a replacement copy at our then applicable charge.

## V.     MARKS

## A.     OWNERSHIP AND GOODWILL OF MARKS

Your right to use the Marks is derived solely from this Agreement and limited to your operation of the Restaurant pursuant to and in compliance with this Agreement and all System Standards we prescribe from time to time during its term. Your unauthorized use of the Marks will be a breach of this Agreement and an infringement of our rights in and to the Marks. You acknowledge and agree that your usage of the Marks and any goodwill established by such use will be exclusively for our benefit and that this Agreement does not confer any goodwill or other interests in the Marks upon you (other than the right to operate the Restaurant in compliance with this Agreement). All provisions of this Agreement applicable to the Marks apply to any additional proprietary trade and service marks and commercial symbols we authorize you to use.

GK·Fran·Agree·2004                    8

B.    LIMITATIONS ON YOUR USE OF MARKS.

You agree to use the Marks as the sole identification of the Restaurant, except that you agree to identify yourself as the independent owner thereof in the manner we prescribe. You may not use any Mark as part of any corporate or legal business name or with any prefix, suffix or other modifying words, terms, designs or symbols (other than logos licensed to you hereunder), or in any modified form, nor may you use any Mark in connection with the performance or sale of any unauthorized services or products or in any other manner we have not expressly authorized in writing. No Mark may be used in any advertising concerning the transfer, sale or other disposition of the Restaurant or an ownership interest in you. You agree to display the Marks prominently in the manner we prescribe at the Restaurant, on supplies or materials we designate and in connection with forms and advertising and marketing materials. You agree to give such notices of trade and service mark registrations as we specify and to obtain any fictitious or assumed name registrations required under applicable law.

C.    NOTIFICATION OF INFRINGEMENT AND CLAIMS

You agree to notify us immediately of any apparent infringement or challenge to your use of any Mark, or of any claim by any person of any rights in any Mark, and you agree not to communicate with any person other than us, our attorneys and your attorneys in connection with any such infringement, challenge or claim. We have sole discretion to take such action as we deem appropriate, at our sole expense, and the right to control exclusively any litigation, U.S. Patent and Trademark Office proceeding or any other administrative proceeding to which you are made a party arising out of any such infringement, challenge or claim or otherwise relating to any Mark. You agree to sign any and all instruments and documents, render such assistance and do such acts and things as, in the opinion of our attorneys, may be necessary or advisable to protect and maintain our interests in any litigation or Patent and Trademark Office or other proceeding or otherwise to protect and maintain our interests in the Marks.

D.    DISCONTINUANCE OF USE OF MARKS

If it becomes advisable at any time in our sole discretion for us and/or you to modify or discontinue the use of any Mark and/or use one or more additional or substitute trade or service marks, you agree to comply with our directions within a reasonable time after receiving notice thereof. We will reimburse you for your reasonable direct expenses of changing the Restaurant's signs. However, we will not be obligated to reimburse you for any loss of revenue attributable to any modified or discontinued Mark or for any expenditures you make to promote a modified or substitute trademark or service mark.

VI.   CONFIDENTIAL INFORMATION

We possess (and will continue to develop and acquire) certain confidential information (the "Confidential Information") relating to the development and operation of a Golden Krust Caribbean Bakery & Grill, which includes (without limitation):

GK·Fran·Agree·2004                              9



    (1)     recipes;

    (2)     site selection criteria;

    (3)     methods, formats, specifications, standards, systems, procedures used, and knowledge of and experience in developing and operating Golden Krust Caribbean Bakery & Grill Restaurants;

    (4)     marketing and advertising programs for Golden Krust Caribbean Bakery & Grill Restaurants;

    (5)     knowledge of specifications for and suppliers of certain fixtures, furnishings, equipment, products, materials and supplies.

You acknowledge and agree that you will not acquire any interest in Confidential Information, other than the right to utilize Confidential Information disclosed to you in operating the Restaurant during the term of this Agreement, and that the use or duplication of any Confidential Information in any other business would constitute an unfair method of competition. You further acknowledge and agree that Confidential Information is proprietary, includes our trade secrets and is disclosed to you solely on the condition that you agree, and you do hereby agree, that you:

    (1)     will not use Confidential Information in any other business or capacity;

    (2)     will maintain the absolute confidentiality of Confidential Information during and after the term of this Agreement;

    (3)     will not make unauthorized copies of any portion of Confidential Information disclosed via electronic medium or in written or other tangible form; and

    (4)     will adopt and implement all reasonable procedures that we prescribe from time to time to prevent unauthorized use or disclosure of Confidential Information, including, without limitation, restrictions on disclosure thereof to Restaurant personnel and others.

All ideas, concepts, techniques or materials relating to a Golden Krust Caribbean Bakery & Grill Restaurant, whether or not constituting protectable intellectual property, and whether created by or on behalf of you or your owners, will be promptly disclosed to us, deemed to be our sole and exclusive property and part of the System and deemed to be works made-for-hire for us. You and your owners agree to sign whatever assignment or other documents we request to evidence our ownership or to assist us in securing intellectual property rights in such ideas, concepts, techniques or materials.

## VII.   EXCLUSIVE RELATIONSHIP

You acknowledge and agree that we would be unable to protect Confidential Information against unauthorized use or disclosure or to encourage a free exchange of ideas and information among Golden Krust Caribbean Bakery & Grills if franchised owners of Golden Krust Caribbean Bakery & Grills were permitted to hold interests in or perform services for a Competitive Business (defined below).  You also acknowledge that we have granted the Franchise to you in consideration of and reliance upon your agreement to deal exclusively with us.  You therefore agree that, during the term of this Agreement, neither you nor any of your owners (nor any of your or your owners' spouses or children) will:

(1)    have any direct or indirect interest as a disclosed or beneficial owner in a Competitive Business operating within ten (10) miles of the Premises;

(2)    have any direct or indirect interest as a disclosed or beneficial owner in a Competitive Business operating within five (5) miles of any Golden Krust Caribbean Bakery & Grill Restaurant other than the Premises;

(3)    perform services as a director, officer, manager, employee, consultant, representative, agent or otherwise for a Competitive Business, wherever located; or

The term "Competitive Business" as used in this Agreement means any business operating, or granting franchises or licenses to others to operate, any restaurant or food service business (other than a Golden Krust Caribbean Bakery & Grill Restaurant operated under a franchise agreement with us).

## VIII.  SYSTEM STANDARDS

### A.   COMPLIANCE WITH SYSTEM STANDARDS

You acknowledge and agree that your operation and maintenance of the Restaurant in accordance with System Standards are essential to preserve the goodwill of the Marks and all Golden Krust Caribbean Bakery & Grill Restaurants.  Therefore, at all times during the term of this Agreement, you agree to operate and maintain the Restaurant in accordance with each and every System Standard, as we periodically modify and supplement them during the term of this Agreement.  System Standards may regulate any one or more of the following with respect to the Restaurant:

(1)    design, layout, decor, appearance and lighting; periodic maintenance, cleaning and sanitation; periodic remodeling; replacement of obsolete or worn-out leasehold improvements, fixtures, furnishings, equipment and signs; periodic painting; and use of interior and exterior signs, emblems, lettering and logos and the illumination thereof;

(2)    types, models and brands of required fixtures, furnishings, equipment, signs,

materials and supplies;

(3)     required or authorized products, ingredients and product categories;

(4)     designated or approved suppliers (which may be limited to or include us) of fixtures, furnishings, equipment, signs, products, ingredients, materials and supplies;

(5)     terms and conditions of the sale and delivery of, and terms and methods of payment for, products, materials, supplies and services, including direct labor, that you obtain from us, unaffiliated suppliers or others;

(6)     sales, marketing, advertising and promotional programs and materials and media used in such programs;

(7)     use and display of the Marks;

(8)     staffing levels for the Restaurant and matters relating to managing the Restaurant; communication to us of the identities of the Restaurant's personnel; and qualifications, training, dress and appearance of employees;

(9)     days and hours of operation of the Restaurant;

(10)     participation in market research and testing and product and service development programs;

(11)     bookkeeping, accounting, data processing and record keeping systems and forms; methods, formats, content and frequency of reports to us of sales, revenue, financial performance and condition; and furnishing tax returns and other operating and financial information to us;

(12)     types, amounts, terms and conditions of insurance coverage required to be carried for the Restaurant and standards for underwriters of policies providing required insurance coverage; our protection and rights under such policies as an additional named insured; required or impermissible insurance contract provisions; assignment of policy rights to us; periodic verification of insurance coverage that must be furnished to us; our right to obtain insurance coverage for the Restaurant at your expense if you fail to obtain required coverage; our right to defend claims; and similar matters relating to insured and uninsured claims;

(13)     complying with applicable laws; obtaining required licenses and permits; adhering to good business practices; observing high standards of honesty, integrity, fair dealing and ethical business conduct in all dealings with customers, suppliers and us; and notifying us if any action, suit or proceeding is commenced against you or the Restaurant; and

(14)     regulation of such other aspects of the operation and maintenance of the Restaurant that we determine from time to time to be useful to preserve or enhance the efficient

operation, image or goodwill of the Marks and Golden Krust Caribbean Bakery & Grill Restaurants.

You agree that System Standards prescribed from time to time in the Operations Manual, or otherwise communicated to you in writing or other tangible form, constitute provisions of this Agreement as if fully set forth herein.  All references to this Agreement include all System Standards as periodically modified.

## IX.   ADVERTISING FUND

You agree to pay to us a monthly advertising fee equal to one percent (1%) of the gross sales of the Restaurant payable from the first day you receive written notice requesting such payment.  This advertising fee shall accompany each monthly royalty payment, but will be segregated by us in a special account maintained solely for the advertising fund.

The advertising fund will be spent only for the preparation, purchase and placement of advertising, except that up to 25% of the fund may be spent by us for the direct costs of administering the fund.  The fund is intended to further general recognition and acceptance of the Golden Krust name, marks and products, and we reserve the sole discretion in administering the fund as well as for the creation, design, development, selection and placement of advertising.

## X.   LOCAL ADVERTISING

You acknowledge that extensive local marketing and advertising efforts are absolutely necessary to the success of your restaurant.  You agree to expend 1% of the annual gross revenues from the operation of your restaurant on local marketing, including but not limited to, local newspaper and other local media.  You agree to advertise and promote your restaurant only in a manner that will reflect favorably on Golden Krust and its good name and reputation.  You further agree to submit to Golden Krust for its prior approval all proposed advertising to be utilized by you.

## XI.   RECORDS, REPORTS AND FINANCIAL STATEMENTS

You agree to establish and maintain at your own expense a bookkeeping, accounting and record keeping system conforming to the requirements and formats we prescribe from time to time.  You agree to furnish to us on such forms that we prescribe from time to time:

(1)     within fifteen (15) days after the end of each calendar month, a report on the Restaurant's Gross Sales during the immediately preceding calendar month;

(2)     within fifteen (15) days after the end of each calendar month, a profit and loss statement for the Restaurant for the immediately preceding calendar month and year-to-date and a balance sheet as of the end of such month;

(3)     within ninety (90) days after the end of the Restaurant's fiscal year, annual profit and loss and source and use of funds statements and a balance sheet for the Restaurant as of the end of such fiscal year; and

(4)     within ten (10) days after our request, exact copies of federal and state income and other tax returns and such other forms, records, books and other information we may periodically require.

## XII.   INSPECTIONS AND AUDITS

### A.     OUR RIGHT TO INSPECT THE RESTAURANT

To determine whether you and the Restaurant are complying with this Agreement and all System Standards, we and our designated agents have the right at any time during your regular business hours, and without prior notice to you, to:

(1)     inspect the Restaurant;

(2)     remove samples of any products, materials or supplies for testing and analysis;

(3)     inspect and copy any books, records and documents relating to your operation of the Restaurant.

### B.     OUR RIGHT TO AUDIT

We have the right at any time during your business hours, and without prior notice to you, to inspect and audit, or cause to be inspected and audited, your (if you are a corporation, limited liability company or partnership) and the Restaurant's business, bookkeeping and accounting records, sales and income tax records and returns and other records.  You agree to cooperate fully with our representatives and independent accountants we hire to conduct any such inspection or audit.  In the event such inspection or audit is made necessary by your failure to furnish reports, supporting records or other information as herein required, or to furnish such items on a timely basis, or in the further event that the audit reveals that you have understated gross sales by two percent (2%) or more, you agree to reimburse us for the cost of such inspection or audit, including, without limitation, the charges of attorneys and independent accountants and the travel expenses, room and board and compensation of our employees.  The foregoing remedies are in addition to our other remedies and rights under this Agreement and applicable law.

## XIII.   TRANSFER

### A.     BY US

This Agreement is fully transferable by us and will benefit any transferee or other legal successor to our interests herein.

GK·Fran·Agree·2004                           14

### B.    BY YOU

You understand and acknowledge that the rights and duties created by this Agreement are personal to you (or, if you are a corporation, limited liability company or partnership, to your owners) and that we have granted the Franchise to you in reliance upon our perceptions of your (or your owners') individual or collective character, skill, aptitude, attitude, business ability and financial capacity. Accordingly, neither this Agreement (or any interest therein) nor any ownership or other interest in you or the Restaurant may be transferred without our prior written approval. Any transfer without such approval constitutes a breach of this Agreement and is void and of no effect. As used in this Agreement, the term "transfer" includes your (or your owners') voluntary, involuntary, direct or indirect assignment, sale, gift or other disposition of any interest in:

(1)    this Agreement;

(2)    you; or

(3)    the Restaurant.

An assignment, sale, gift or other disposition includes the following events:

(a)    transfer of ownership of capital stock or a partnership interest;

(b)    merger or consolidation or issuance of additional securities or interests representing an ownership interest in you;

(c)    any issuance or sale of your stock or any security convertible to your stock;

(d)    transfer of an interest in you, this Agreement or the Restaurant in a divorce, insolvency or corporate or partnership dissolution proceeding or otherwise by operation of law;

(e)    transfer of an interest in you, this Agreement or the Restaurant, in the event of your death or the death of one of your owners, by will, declaration of or transfer in trust or under the laws of intestate succession; or

(f)    pledge of this Agreement (to someone other than us) or of an ownership interest in you as security, foreclosure upon the Restaurant or your transfer, surrender or loss of possession, control or management of the Restaurant.

### C.  CONDITIONS FOR APPROVAL OF TRANSFER

Our approval for a transfer shall be conditioned upon the following:

1.    you be then in full compliance with the terms of this and any other agreement

between us including but not limited to complying with all current system standards and paying to us a transfer fee of $10,000.00 to cover our costs in reviewing and administering the proposed transfer.

2.      the transferee and its owners meeting our criteria for franchisees, having adequate financial resources, aptitude, experience and otherwise being capable of operating a Golden Krust Caribbean Bakery & Grill Restaurant.

3.      you submitting all proposed advertisements for the sale or other disposition of the franchise to us for written approval, our approval shall not be unreasonably withheld;

4.      the transferee executing our then current franchise agreement and other documents then used by us in granting franchises.

5.      you paying all amounts owed to us and our affiliates and all other creditors of your Golden Krust Caribbean Bakery & Grill Restaurant;

6.      you executing a general release of us, our affiliates and officers, directors and employees; and

7.      the transferee purchasing all of your assets used in the Golden Krust Caribbean Bakery & Grill Restaurant, assuming all of your existing business liabilities including liabilities owed to us and assuming your lease.

8 ~~VIII~~.   you or your proposed transferee agreeing to update, remodel and refurbish your Restaurant to reflect the then current design, layout and trade dress of Golden Krust Caribbean Bakery and Grill Restaurants.

**D.      TRANSFER TO A WHOLLY-OWNED CORPORATION OR LIMITED LIABILITY COMPANY**

Notwithstanding Paragraph C of this Section, if you are in full compliance with this Agreement, you may transfer this Agreement to a corporation or limited liability company which conducts no business other than the Restaurant and, if applicable, other Golden Krust Caribbean Bakery & Grill Restaurant, in which you maintain management control and of which you own and control one hundred percent (100%) of the equity and voting power of all issued and outstanding capital stock or other ownership interests, and further provided that all assets of the Restaurant are owned, and the entire business of the Restaurant is conducted, by a single corporation or limited liability company.  Transfers of ownership interests in such corporation or limited liability company will be subject to the provisions of Paragraph C of this Section. Notwithstanding anything to the contrary herein, you agree to remain personally liable under this Agreement as if the transfer to such corporation or limited liability company had not occurred.

### E.    YOUR DEATH OR DISABILITY

(1)    Transfer Upon Death or Disability.  Upon your death or disability or, if you are a corporation, limited liability company or partnership, the death or disability of the owner of a controlling interest in you, your or such owner's executor, administrator, conservator, guardian or other personal representative must transfer your interest in this Agreement or such owner's interest in you to a third party.  Such disposition of this Agreement or the interest in you (including, without limitation, transfer by bequest or inheritance) must be completed within a reasonable time, not to exceed six (6) months from the date of death or disability, and will be subject to all of the terms and conditions applicable to transfers contained in this Section.  A failure to transfer your interest in this Agreement or the ownership interest in you within this period of time constitutes a breach of this Agreement.  For purposes hereof, the term "disability" means a mental or physical disability, impairment or condition that is reasonably expected to prevent or actually does prevent you or an owner of a controlling interest in you from managing and operating the Restaurant.

(2)    Operation Upon Death or Disability.  If, upon your death or disability or the death or disability of the owner of a controlling interest in you, the Restaurant is not being managed by a trained manager, your or such owner's executor, administrator, conservator, guardian or other personal representative must within a reasonable time, not to exceed fifteen (15) days from the date of death or disability, appoint a manager to operate the Restaurant.  Such manager will be required to complete training at your expense.  Pending the appointment of a manager as provided above or if, in our judgment, the Restaurant is not being managed properly any time after your death or disability or after the death or disability of the owner of a controlling interest in you, we have the right, but not the obligation, to appoint a manager for the Restaurant.  All funds from the operation of the Restaurant during the management by our appointed manager will be kept in a separate account, and all expenses of the Restaurant, including compensation, other costs and travel and living expenses of our manager, will be charged to this account.  We also have the right to charge a reasonable management fee (in addition to the Royalty and Advertising Fund contributions payable under this Agreement) during the period that our appointed manager manages the Restaurant.  Operation of the Restaurant during any such period will be on your behalf, provided that we only have a duty to utilize our best efforts and will not be liable to you or your owners for any debts, losses or obligations incurred by the Restaurant or to any of your creditors for any products, materials, supplies or services the Restaurant purchases during any period it is managed by our appointed manager.

### F.    EFFECT OF CONSENT TO TRANSFER

Our consent to a transfer of this Agreement and the Restaurant or any interest in you does not constitute a representation as to the fairness of the terms of any contract between you and the transferee, a guarantee of the prospects of success of the Restaurant or transferee or a waiver of any claims we may have against you (or your owners) or of our right to demand the transferee's exact compliance with any of the terms or conditions of this Agreement.



### G.    OUR RIGHT OF FIRST REFUSAL

If you (or any of your owners) at any time determine to sell, assign or transfer for consideration an interest in this Agreement and the Restaurant or an ownership interest in you, you (or such owner) agree to obtain a good faith, executed written offer and earnest money deposit (in the amount of five percent (5 %) or more of the offering price) from a responsible and fully disclosed offeror.

We have the right, exercisable by written notice delivered to you or your selling owner(s) within thirty (30) days from the date of the delivery to us of both an exact copy of such offer and all other information we request, to purchase such interest for the price and on the terms and conditions contained in such offer, provided that:

(1)    we may substitute cash for any form of payment proposed in such offer;

(2)    our credit will be deemed equal to the credit of any proposed purchaser;

(3)    we will have not less than Sixty (60) days after giving notice of our election to purchase to prepare for closing; and

(4)    we are entitled to receive, and you and your owners agree to make, all customary representations and warranties given by the seller of the assets of a business or the capital stock of an incorporated business, as applicable.

If we exercise our right of first refusal, you and your selling owner(s) agree that, for a period of three (3) years commencing on the date of the closing, you and they will be bound by the noncompetition covenant contained in Section XIV D hereof. You and your selling owner(s) further agree that you and they will, during this same time period, abide by the restrictions of Section 12.C.(10) of this Agreement.

If we do not exercise our right of first refusal, you or your owners may complete the sale to such purchaser. pursuant to and on the exact terms of such offer, subject to our approval of the transfer as provided in Paragraphs B and C of this Section, provided that, if the sale to such purchaser is not completed within one hundred twenty (120) days after delivery of such offer to us, or if there is a material change in the terms of the sale (which you agree promptly to communicate to us), we will have an additional right of first refusal during the thirty (30) day period following either the expiration of such one hundred twenty (120) day period or notice to us of the material change(s) in the terms of the sale, either on the terms originally offered or the modified terms, at our option.

## XIII.  TERMINATION OF AGREEMENT

### A.    BY YOU

If you and your owners are in compliance with this Agreement and we materially fail to comply with this Agreement and do not correct such failure within thirty (30) days after written notice of such material failure is delivered to us, you may terminate this Agreement effective thirty (30) days after delivery to us of written notice of termination.  Your termination of this Agreement for any other reason or without such notice will be deemed a termination without cause.

### B.    BY US

We have the right to terminate this Agreement, effective upon delivery of written notice of termination to you, if:

(1)    you (or any of your owners) have made any material misrepresentation or omission in connection with your purchase of the Franchise;

(2)    you (or your Managing Owner) fail to successfully complete initial training to our satisfaction;

(3)    you fail to begin operating the Restaurant within one hundred eighty (180) calendar days after the execution of this Agreement;

(4)    you abandon or fail actively to operate the Restaurant for two (2) or more consecutive business days, unless the Restaurant has been closed for a purpose we have approved or because of casualty or government order;

(5)    you surrender or transfer control of the operation of the Restaurant without our prior written consent;

(6)    you (or any of your owners) are or have been convicted of, or plead or have pleaded no contest to, a felony;

(7)    you (or any of your owners) engage in any dishonest or unethical conduct which may adversely affect the reputation of the Restaurant or another Golden Krust Caribbean Bakery & Grill Restaurant or the goodwill associated with the Marks;

(8)    you (or any of your owners) make an unauthorized assignment of this Agreement or of an ownership interest in you or the Restaurant;

(9)    in the event of your death or disability or the death or disability of the owner of a controlling interest in you, this Agreement or such owner's interest in you is not assigned as

herein required;

    (10)    you lose the right to possession of the Premises;

    (11)    you (or any of your owners) make any unauthorized use or disclosure of any Confidential Information or use, duplicate or disclose any portion of the Operations Manual in violation of this Agreement;

    (12)    you violate any health, safety or sanitation law, ordinance or regulation and do not begin to cure the noncompliance or violation immediately, and correct such noncompliance or violation within seventy-two (72) hours, after written notice thereof is delivered to you;

    (13)    you fail to make payments of any amounts due to us and do not correct such failure within ten (10) days after written notice of such failure is delivered to you;

    (14)    you fail to pay when due any federal or state income, service, sales or other taxes due on the operations of the Restaurant, unless you are in good faith contesting your liability for such taxes;

    (15)    you (or any of your owners) fail to comply with any other provision of this Agreement or any System Standard and do not correct such failure within thirty (30) days after written notice of such failure to comply is delivered to you;

    (16)    you (or any of your owners) fail on three (3) or more separate occasions within any period of twelve (12) consecutive months to submit when due reports or other data, information or supporting records, to pay when due any amounts due to us or otherwise to comply with this Agreement, whether or not such failures to comply were corrected after written notice of such failure was delivered to you; or

    (17)    you make an assignment for the benefit of creditors or admit in writing your insolvency or inability to pay your debts generally as they become due; you consent to the appointment of a receiver, trustee or liquidator of all or the substantial part of your property; the Restaurant is attached, seized, subjected to a writ or distress warrant or levied upon, unless such attachment, seizure, writ, warrant or levy is vacated within thirty (30) days; or any order appointing a receiver, trustee or liquidator of you or the Restaurant is not vacated within thirty (30) days following the entry of such order.

## XIV.  OUR AND YOUR RIGHTS AND OBLIGATIONS UPON TERMINATION OR EXPIRATION OF THIS AGREEMENT

### A. PAYMENT OF AMOUNTS OWED TO US

    You agree to pay us within fifteen (15) days after the effective date of termination or expiration of this Agreement, or on such later date that the amounts due to us are determined,

such Royalties, Advertising Fund contributions, amounts owed for purchases from us, interest due on any of the foregoing and all other amounts owed to us which are then unpaid.

### B.  MARKS

Upon the termination or expiration of this Agreement:

(1)  you may not directly or indirectly at any time or in any manner (except with respect to other Golden Krust Caribbean Bakery & Grill you own and operate) identify yourself or any business as a current or former Golden Krust Caribbean Bakery & Grill, or as one of our licensees or franchisees, use any Mark, any colorable imitation thereof in any manner or for any purpose or utilize for any purpose any trade name, trade or service mark or other commercial symbol that indicates or suggests a connection or association with us;

(2)  you agree to take such action as may be required to cancel all fictitious or assumed name or equivalent registrations relating to your use of any Mark;

(3)  if we do not have or do not exercise an option to purchase the Restaurant pursuant to Paragraph E of this Section, you agree to deliver to us within thirty (30) days after, as applicable, the effective date of expiration of this Agreement or the Notification Date (as defined in Paragraph E(1) of this Section) all signs, sign-faces, sign-cabinets, marketing materials, forms and other materials containing any Mark or otherwise identifying or relating to a Golden Krust Caribbean Bakery & Grill Restaurant and allow us, without liability to you or third parties, to remove all such items from the Restaurant;

(4)  if we do not have or do not exercise an option to purchase the Restaurant pursuant to paragraph E of this Section, you agree that, after, as applicable, the effective date of expiration of this Agreement or the Notification Date, you will promptly and at your own expense make such alterations we specify to distinguish the Restaurant clearly from its former appearance and from other Golden Krust Caribbean Bakery & Grill Restaurants so as to prevent confusion therewith by the public;

(5)  if we do not have or do not exercise an option to purchase the Restaurant pursuant to Paragraph E of this Section, you agree that, after, as applicable, the effective date of expiration of this Agreement or the Notification Date, you will notify the telephone company and all telephone directory publishers of the termination or expiration of your right to use any telephone numbers or other telephone directory listings associated with any Mark.

### C.  CONFIDENTIAL INFORMATION

You agree that, upon termination or expiration of this Agreement, you will immediately cease to use any of our Confidential Information in any business or otherwise and return to us all copies of the Operations Manual and any other confidential materials that we have loaned to you.

**D.    COVENANT NOT TO COMPETE**

Upon

(1)    our termination of this Agreement in accordance with its terms and conditions,

(2)    your termination of this Agreement without cause, or

(3)    expiration of this Agreement (if we offer, but you elect not to acquire, a successor franchise),

(4)    your sale or transfer of the Restaurant pursuant to the provisions of Section XII B hereof,

you and your owners agree that, for a period of two (2) years commencing on the effective date of termination or expiration or the date on which a person restricted by this Paragraph begins to comply with this Paragraph, whichever is later, neither you nor any of your owners will have any direct or indirect interest (e.g., through a spouse or child) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or in any other capacity in any Competitive Business (as defined in Section VII above) operating

(a)    at the Premises;

(b)    within ten (10) miles of the Premises; or

(c)    within five (5) miles of any other Golden Krust Caribbean Bakery & Grill in operation or under construction on the later of the effective date of the termination or expiration or the date on which a person restricted by this Paragraph complies with this Paragraph.

If any person restricted by this Paragraph refuses voluntarily to comply with the foregoing obligations, the two (2) year period will commence with the entry of an order of an arbitrator, or court if necessary, enforcing this provision. You and your owners expressly acknowledge that you possess skills and abilities of a general nature and have other opportunities for exploiting such skills. Consequently, enforcement of the covenants made in this Paragraph will not deprive you of your personal goodwill or ability to earn a living.

**E.    OUR RIGHT TO PURCHASE RESTAURANT**

(1) Exercise of Option

Upon the termination or expiration of this Agreement in accordance with its terms and conditions, we have the option, exercisable by giving written notice thereof to you within sixty (60) days from the date of such termination or expiration, to purchase the Restaurant from you, including the leasehold rights to the Premises. (The date on which we notify you whether or

not we are exercising our option is referred to in this Agreement as the "Notification Date".) We have the unrestricted right to assign this option to purchase the Restaurant. We will be entitled to all customary warranties and representations in connection with our asset purchase, including, without limitation, representations and warranties as to ownership and condition of and title to assets; liens and encumbrances on assets; validity of contracts and agreements; and liabilities affecting the assets, contingent or otherwise.

(2)    Leasehold Rights

You agree at our election:

(a)    to assign your leasehold interest in the Premises to us; or

(b)    to enter into a sublease for the remainder of the lease term on the same terms (including renewal options) as the prime lease.

(3)    Purchase Price

The Purchase price for the Restaurant will be its fair market value, determined in a manner consistent with reasonable depreciation of the Restaurant's equipment, signs, inventory, materials and supplies, provided that the Restaurant will be valued as an independent business and its value will not include any value for:

(a)    the franchise or any rights granted by this Agreement;

(b)    the Marks; or

(c)    participation in the network of Golden Krust Caribbean Bakery & Grill Restaurants.

The Restaurant's fair market value will include the goodwill you developed in the market of the Restaurant that exists independent of the goodwill of the Marks and the System. The length of the remaining term of the lease for the Premises will also be considered in determining the Restaurant's fair market value.

We may exclude from the assets purchased hereunder cash or its equivalent and any equipment, signs, inventory, materials and supplies that are not reasonable necessary (in function or quality) to the Restaurant's operation or that we have not approved as meeting standards for Golden Krust Caribbean Bakery & Grill Restaurants, and the purchase price will reflect such exclusions.

(4)    Appraisal

If we and you are unable to agree on the Restaurant's fair market value, its fair

market value will be determined by three (3) independent appraisers who collectively will conduct one (1) appraisal. We will appoint one appraiser, you will appoint one appraiser and the two party-appointed appraisers will appoint the third appraiser. You and we agree to select our respective appraisers within fifteen (15) days after we notify you that we are exercising our option to purchase the Restaurant, and the two appraisers so chosen are obligated to appoint the third appraiser within fifteen (15) days after the date on which the last of the two party-appointed appraisers was appointed. You and we will bear the cost of our own appraisers and share equally the fees and expenses of the third appraiser chosen by the two party-appointed appraisers. The appraisers are obligated to complete their appraisal within thirty (30) days after the third appraiser's appointment.

The purchase price will be paid at the closing of the purchase, which will take place not later than ninety (90) days after determination of the purchase price. We have the right to set off against the purchase price, and thereby reduce the purchase price by, any and all amounts you or our owners owe to us. At the closing you agree to deliver instruments transferring to us:

(a)    good and merchantable title to the assets purchased, free and clear of all liens and encumbrances (other than liens and security interests acceptable to us), with sales and other transfer taxes paid by you; and

(b)    all licenses and permits of the Restaurant which may be assigned or transferred; and

(c)    the leasehold interest in the Premises and improvements thereon.

If you cannot deliver clear title to all of the purchased assets, or if there are other unresolved issues, the closing of the sale will be accomplished through an escrow. You and your owners further agree to execute general releases, in form satisfactory to us, of any and all claims against us and our shareholders, officers, directors, employees, agents, successors and assigns.

## F.    CONTINUING OBLIGATIONS

All of our and your (and your owners' and affiliates') obligations which expressly or by their nature survive the expiration or termination of this Agreement will continue in full force and effect subsequent to and notwithstanding its expiration or termination and until they are satisfied in full or by their nature expire.

## XV.    RELATIONSHIP OF THE PARTIES/INDEMNIFICATION

### A.    INDEPENDENT CONTRACTORS

You and we understand and agree that this Agreement does not create a fiduciary relationship between you and us, that we and you are and will be independent contractors and

that nothing in this Agreement is intended to make either you or us a general or special agent, joint venturer, partner or employee of the other for any purpose. You agree to conspicuously identify yourself in all dealings with customers, suppLiers, public officials, Restaurant personnel and others as the owner of the Restaurant under a franchise we have granted and to place such notices of independent ownership on such forms, business cards, stationery and advertising and other materials as we may require from time to time.

## B.    INDEMNIFICATION

You agree to indemnify, defend and hold harmless us, our affiliates and our respective shareholders, directors, officers, employees, agents, successors and assignees (the "Indemnified Parties") against and to reimburse any one or more of the Indemnified Parties for all claims, obligations and damages described in this Paragraph, any and all taxes and any and all claims and liabilities directly or indirectly arising out of the Restaurant's operation or your breach of this Agreement. For purposes of this indemnification, "claims" includes all obligations, damages (actual, consequential or otherwise) and costs reasonably incurred in the defense of any claim against any of the Indemnified Parties, including, without limitation, reasonable accountants', arbitrators', attorneys' and expert witness fees, court costs, other expenses of litigation, arbitration or alternative dispute resolution and travel and living expenses. We have the right to defend any such claim against us. This indemnity will continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

Under no circumstances will we or any other Indemnified Party be required to seek recovery from any insurer or other third party, or otherwise to mitigate our, their or your losses and expenses in order to maintain and recover fully a claim against you. You agree that a failure to pursue such remedy or mitigate a loss will in no way reduce or alter the amount we may recover from you by way of indemnity.

## XVI.  ENFORCEMENT

## A.    WAIVER OF OBLIGATIONS

We and you may by written instrument unilaterally waive or reduce any obligation of or restriction upon the other under this Agreement, effective upon delivery of written notice thereof to the other or such other effective date stated in the notice of waiver. Any waiver we grant will be without prejudice to any other rights we may have, will be subject to our continuing review and may be revoked, in our sole discretion, at any time and for any reason, effective upon delivery to you of ten (10) days' prior written notice.

We and you will not be deemed to have waived or impaired any right, power or option reserved by this Agreement (including, without limitation, the right to demand exact compliance with every term, condition and covenant herein or to declare any breach thereof to be a default and to terminate this Agreement prior to the expiration of its term)-by virtue of any custom or practice at variance with the terms hereof; our or your failure, refusal or neglect to exercise any

right under this Agreement or to insist upon exact compliance by the other with our and your obligations hereunder, including, without limitation, any System Standard; our waiver, forbearance, delay, failure or omission to exercise any right, power or option, whether of the same, similar or different nature, with respect to other Golden Krust Caribbean Bakery & Grill; the existence of other franchise agreements for Golden Krust Caribbean Bakery & Grill Restaurants which contain different provisions from those contained herein; or our acceptance of any payments due from you after any breach of this Agreement.  No special or restrictive legend or endorsement on any check or similar item given to us will constitute a waiver, compromise, settlement or accord and satisfaction.  We are authorized to remove or obliterate any legend or endorsement, and such legend or endorsement will have no effect.

Neither we nor you will be liable for loss or damage or deemed to be in breach of this Agreement if our or your failure to perform our or your obligations results from:

(1)     transportation shortages, inadequate supply of equipment, products, supplies, labor, material or energy or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state or municipal government or any department or agency thereof;

(2)     acts of God;

(3)     fires, strikes, embargoes, war or riot; or

(4)     any other similar event or cause.

Any delay resulting from any of said causes will extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that said causes will not excuse payments of amounts owed at the time of such occurrence or payment of Royalties due on any sales thereafter.

### B.     COSTS AND ATTORNEYS' FEES

If we incur expenses in connection with your failure to pay when due amounts owed to us, to submit when due any reports, information or supporting records or otherwise to comply with this Agreement, you agree to reimburse us for any of the costs and expenses which we incur, including, without limitation, reasonable accounting, attorneys', arbitrators' and related fees.

### C.     YOU MAY NOT WITHHOLD PAYMENTS DUE TO US

You agree that you will not withhold payment of any amounts owed to us on the grounds of our alleged nonperformance of any of our obligations hereunder.  You agree that all such claims will, if not otherwise resolved by us, be submitted to arbitration as provided in Paragraph F of this Section.

**D.    RIGHTS OF PARTIES ARE CUMULATIVE**

Our and your rights hereunder are cumulative, and no exercise or enforcement by us or you of any right or remedy hereunder will preclude our or your exercise or enforcement of any other right or remedy hereunder which we or you are entitled by law to enforce.

**E.    ARBITRATION**

Except for controversies, disputes or claims related to or based on your use of the marks after the expiration or termination of this agreement, all controversies, disputes or claims between us and our shareholders, officers, directors, agents and employees and you (your owners, guarantors, affiliates and employees, if applicable) arising out of or related to:

(1)    This Agreement or any other agreement between you and us or any provision of any such agreement;

(2)    Our relationship with you;

(3)    The validity of this agreement or any other agreement between you and us or any provision of any such agreement; or

(4)    Any system standard relating to the establishment or operation of the Restaurant will be submitted for arbitration to the White Plains, New York office of the American Arbitration Association on demand of either party.  Such arbitration proceedings will be conducted at White Plains, New York and, except as otherwise provided in this agreement, will be heard by one arbitrator in accordance with the then current commercial arbitration rules of the American Arbitration Association.  All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 se seq.) and not by any state arbitration law.

The arbitrator will have the right to award or include in his award any relief which he deems proper in the circumstances, including, without limitation, money damages (with interest on unpaid amounts from the date due), specific performance, injunctive relief and attorneys' fees and costs, provided that the arbitrator will not have the right to declare any mark generic or otherwise invalid or, except as otherwise provided in paragraph I of this section, to award exemplary or punitive damages.  The award and decision of the arbitrator will be conclusive and binding upon all parties hereto, and judgment upon the award may be entered in any court of competent jurisdiction.

Notwithstanding anything to the contrary contained in this paragraph, we and you each have the right in a proper case to obtain temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction; provided, however, that we and you must contemporaneously submit our dispute for arbitration on the merits as provided herein.

GK·Fran·Agree·2004                    27

### F.    GOVERNING LAW

Except to the extent governed by the Federal Arbitration Act as required hereby, the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051 et seq.) or other federal law, this agreement, the franchise and all claims arising from the relationship between us and you will be governed by the laws of the state of New York, without regard to its conflict of laws principles, except that any New York law regulating the sale of franchises or governing the relationship of a franchisor and its franchisee will not apply unless its jurisdictional requirements are met independently without reference to this paragraph.

### G.    BINDING EFFECT

This Agreement is binding upon us and you and our respective executors, administrators, heirs, beneficiaries, assigns and successors in interest and may not be modified except by written agreement signed by you and us.

### H.    CONSTRUCTION

The preambles and exhibits are a part of this Agreement which, together with the Operations Manual and our other written policies, constitutes our and your entire agreement except as provided below, and there are no other oral or written understandings or agreements between us and you relating to the subject matter of this Agreement.

## XVII. NOTICES AND PAYMENTS

All written notices, reports and payments permitted or required to be delivered by the provisions of this Agreement or the Operations Manual will be deemed so delivered:

(1)     at the time delivered by hand;

(2)     one (I) business day after transmission by telecopy, facsimile or other electronic system;

(3)     one (I) business day after being placed in the hands of a commercial courier service for next business day delivery; or

(4)     three (3) business days after placement in the United States Mail by Registered or Certified Mail, Return Receipt Requested, postage prepaid;

and must be addressed to the party to be notified at its most current principal business address of which the notifying party has been notified.

GK·Fran·Agree·2004                28

## XVIII.  PROJECTED FRANCHISE SALES, PROFITS OR EARNINGS

### A.  NO WARRANTY REGARDING PROFITABILITY

The parties hereto recognize and acknowledge that due to the competitive nature of the business involved, successful operation of the Restaurant will primarily depend upon the efforts, capabilities and management abilities of you and on efficient operation of the Restaurant as well as local market conditions.  We disclaim the inducing of and that you acknowledge that you have not received any claims, warranty, representation of guarantee, express or collateral, whatsoever regarding potential sales, profits, earnings or success of the Restaurant or achievable by you.

### B.  NO WARRANTY REGARDING PROJECTED COSTS

We hereby disclaim making or utilizing, and you acknowledge that you have not received any projections of sales, earnings or profits as an inducement for the sale of the Restaurant.  It is understood that you are starting a new business (or acquiring an existing business) and are assuming the financial risks attendant thereto.  Where we provide information requested by you relating to costs of operating a Golden Krust Caribbean Bakery & Grill, such as rents, labor costs, or equipment lease costs, such information shall not be construed as a representation or warranty relative to any future sales, profits, or earnings or success achievable by you.

### C.  NO INDUCEMENT

You acknowledge that no claims, representations, promises, guarantees, or warranties of any kind are or were made by us to induce you to execute this Agreement, except as specifically set forth in writing this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed and

delivered this Agreement on the date stated on the first page hereof.

DATED: _____

GOLDEN KRUST FRANCHISING, INC.,

By _____
(Title)

FRANCHISEE,

_____
(Name)

By _____
(Title)

DATED: March 10, 2006

INDIVIDUALS:

_____
(Signature)

_____
(Print Name)

_____
(Signature)

_____
(Print Name)

DATED: _____

GK-Fran-Agree-2004                    30

**AMENDMENT TO GOLDEN KRUST FRANCHISING, INC. D/B/A/ GOLDEN KRUST CARIBBEAN BAKERY & GRILL FRANCHISE AGREEMENT AND OFFERING CIRCULAR FOR THE STATE OF NEW YORK**

The Golden Krust Franchising, Inc. Franchise Agreement between _MARILYN BULLOCK_ ("Franchisee") and Golden Krust Franchising, Inc. d/b/a Golden Krust Caribbean Bakery & Grill ("Franchisor") dated _March 10, 2006_ (the "Agreement") shall be amended by the addition of the following language, which shall be considered an integral part of the Agreement:

## NEW YORK MODIFICATIONS

1.   The New York Department of Law requires that certain provisions contained in franchise documents be amended to be consistent with New York law, including the General Business Law, Article 33, Sections 680 through 695 (1989).  To the extent that the Agreement contains provisions that are inconsistent with the following, such provisions are hereby amended:

    a.   If the Agreement requires Franchisee to execute a release of claims or to acknowledge facts that would negate or remove from judicial review any statement, misrepresentation or action that would violate the General Business Law, or any regulation, rule or order under the Law, such release shall exclude claims arising under the New York General Business Law, Article 33, Section 680 through 695 and the regulations promulgated thereunder, and such acknowledgments shall be void. It is the intent of this provision that non-waiver provisions of Sections 687.4 and 687.5 of the General Business Law be satisfied.

    b.   If the Agreement requires that it be governed by a state's law, other than the State of New York, the choice of law provision shall not be considered to waive any rights conferred upon the Licensee under the New York General Business Law, Article 33, Sections 680 through 695.

2.   Item 3 of the Offering Circular is amended to read:

    LITIGATION:   Except as set forth below, neither the franchisor, its predecessor, a person identified in item 2, or an affiliate offering franchises under the franchisor's principal trademark:

        A.   Has an administrative, criminal or civil action

1

pending against that person alleging: a felony; a violation of a franchise, antitrust or securities law; fraud, embezzlement, fraudulent conversion, misappropriation of property; unfair or deceptive practices or comparable civil or misdemeanor allegations. In addition, include pending actions, other than routine litigation incidental to the business, which are significant in the context of the number of franchisees and the size, nature or financial condition of the franchise system or its business operations.

B. Has been convicted of a felony or pleaded nolo contendere to a felony charge or, within the ten-year period immediately preceding the application for registration, has been convicted of or pleaded nolo contendere to a misdemeanor charge or has been the subject of a civil action alleging; violation of a franchise, antifraud or securities law; fraud, embezzlement, fraudulent conversion or misappropriation of property, or unfair or deceptive practices or comparable allegations.

C. Is subject to a currently effective injunction or restrictive order or decree relating to the franchise, or under a federal, State or Canadian franchise, securities, antitrust, trade regulation or trade practice law, resulting from a concluded or pending action or proceeding brought by a public agency; or is subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities and Exchange Act of 1934, suspending or expelling such person from membership in such association or exchange; or is subject to a currently effective injunctive or restrictive order relating to any other business activity as a result of an action brought by a public agency or department, including, without limitation, actions affecting a license as a real estate broker or sales agent.

Almon Corporation v Golden Krust Franchising, Inc.

1) On October 4, 1998 Franchisor terminated its franchisee Almon corp. for numerous violations of its Franchise Agreement. On November 19, 1999 Almon Corp. filed for arbitration with the AAA in White Plains, New York alleging various allegations by franchisor of the Franchise Agreement and seeking $250,000.00 in damages. Golden Krust filed a counterclaim against Almon seeking approximately $100,000.00 in royalties and for product. The matter was settled during mediation by the AAA by the payment of the sum of $67,500.00 to the Franchise in return for Franchisee's assigning the lease to their bakery to Golden Krust and additionally conveying ownership to Golden Krust of certain restaurant equipment. (AAA Case #19-114-136-98)

2

2)  <u>Tafari, Inc. and Sandra and Vincent Long v Golden Krust</u>

On or about April 5, 1999 the above Franchisee and its Guarantors filed for arbitration with the AAA in White Plains, New York alleging, inter alia, that Golden Krust fraudulently induced the Franchisee to enter into a Franchise Agreement with Franchisor, made certain misrepresentations to the Franchisee and otherwise breached the terms of the Franchise Agreement between Franchise and Franchisor.  The claimants are seeking in excess of $250,000.00 in damages against Golden Krust.  Golden Krust has filed a Counterclaim against the Franchisee and its Guarantors for breach of the Franchise Agreement by their refusal to pay franchise fees and for products purchased.  An Arbitration Hearing was held in December 2000 and the Franchisee was awarded damages in the amount of $128,500 together with its attorneys fees and costs. <u>AAA Case #19 114 00034 99.</u>

3.  <u>Romeo McCormack el al v Golden Krust Franchising, Inc. et al</u>

On or about May 19th, 2000 the above franchisee filed a Demand for arbitration with the American Arbitration Association alleging, inter alia, that Golden Krust fraudulently induced the franchisee to purchase a Golden Krust franchise by making certain misrepresentations concerning the franchise opportunity.  The franchisee also alleges that Golden Krust breached certain provisions of the franchise agreement.  The franchisee is seeking recission of the franchise agreement and $250,000.00 in damages.  Golden Krust has responded by denying all of the franchisee's allegations and counterclaiming against the franchisee for certain breaches of the franchisee agreement the parties have agreed to pursue mediation and are awaiting the scheduling of a mediation session.  <u>(AAA Case #19 114 00049 00)</u>

Other than these three actions, no litigation is required to be disclosed in this offering circular.

3.  Item 4 of the Offering Circular is amended to read:

BANKRUPTCY:     Neither the franchisor, its affiliate, its predecessor, officers, or general partner during the 10 year period immediately before the date of the offering circular: (a) filed as debtor (or had filed against it) a petition to start an action under U.S. Bankruptcy Code; (b) obtained a discharge of its debts under the bankruptcy code; or (c) was a principal officer of a company or a general partner in a partnership that either filed as a debtor (or had filed against it) a petition to start an action under the U.S. Bankruptcy Code or that obtained a discharge of its debts under the U.S. Bankruptcy Code during or within 1 year after

3

officer or general partner of the franchisor held this position in the company or partnership.

4.     Each provision of this Amendment shall be effective only to the extent that the jurisdictional requirements of New York General Business Law, with respect to each such provision, are met independent of this Amendment.  This Amendment shall have no force or effect if such jurisdictional requirements are not met.

IN WITNESS WHEREOF, the parties hereto set their hands and seals, in duplicate, on this 10th day of March, 2006 .

GOLDEN KRUST FRANCHISING, INC.

By _____

Its _____

_____
Franchisee

_____
Franchisee

_____
Franchisee

I:\USER\ROBIN\Golden Krust\Golden Krust UFOC 2004\2004 NY State Amendment Golden Krust.wpd

4

EXHIBIT A

TO THE FRANCHISE AGREEMENT
BETWEEN GOLDEN KRUST FRANCHISING, INC.
AND   _MARILYN   BULLOCK_
DATED 3/10, 200_6_

Effective Date: This Exhibit A is current and complete
as of 3/10 , 200_6_

<u>You and Your Owners</u>

1.    <u>Form of Owner</u>.

    (a)  <u>Proprietorship</u>.  Your owner(s) (is) (are) as follows:

_____

_____

_____

    (b)  <u>Corporation, Limited Liability Company or Partnership</u>.  You were incorporated or formed on _SEPT. 25   1995_, ☎ , under the laws of the State of _NEW YORK_ .  You have not conducted business under any name other than your corporate, limited liability company or partnership name and _____ . The following is a list of your directors, if applicable, and officers as of the effective date shown above:

| Name of Each Director/Officer | Position(s) Held |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

GK·Fran·Agree·2004                    31

_____          _____

_____          _____

2.  <u>Owners</u>.  The following list includes the full name and mailing address of each person who is one of your owners (as defined in the Franchise Agreement) and fully describes the nature of each owner's interest.

<u>Owner's Name and Address</u>          <u>Description of Interest</u>

MARILYN BULLOCK                   100 %

_____          _____

_____          _____

GOLDEN KRUST
FRANCHISING, INC.

By _____          OWNER

CORPORATION, LIMITED LIABILITY
COMPANY OR PARTNERSHIP
MARILYNS PATTIES, INC. d/b/a
GOLDEN KRUST BAKERY, INC
(Name)

INDIVIDUALS

_Marilyn Bullock_
(Signature)

MARILYN BULLOCK
(Print Name)

_____
(Signature)

_____
(Print Name)

# CORBALLY GARTLAND AND RAPPLEYEA LLP

A HERITAGE OF LEGAL COUNSEL

CHARLES J. CORBALLY (1966)
JOHN J. GARTLAND, JR. (2003)
ALLAN E. RAPPLEYEA (2010)
JON HOLDEN ADAMS
MICHAEL G. GARTLAND
VINCENT L. DeBIASE
PAUL O. SULLIVAN *(also FL)*
WILLIAM F. BOGLE, JR.
RENA MUCKENHOUPT O'CONNOR
ALLAN B. RAPPLEYEA *(also CT)*
LEAH J. BALASSONE
KAREN E. HAGSTROM
WILLIAM W. FRAME
KRISTEN L. CINQUE

*Of Counsel*
RICHARD V. CORBALLY

SINCE 1876

BARDAVON BUILDING
35 MARKET STREET
POUGHKEEPSIE, NY 12601-3285

845-454-1110 TEL·845-454-4857 FAX
E-MAIL: info@cgrlaw.com

WWW.CGRLAW.COM

*Administrator*
CAROL ANN NEVILLE

*Regional Offices*
30 FRONT STREET
PO BOX 679
MILLBROOK, NY 12545
845-677-5539 TEL
845-677-6297 FAX

6369 MILL STREET
PO BOX 366
RHINEBECK, NY 12572
845-876-4091 TEL
845-876-7192 FAX

BY APPOINTMENT:
CLEARWATER, FL 33756

April 2, 2013

**VIA FEDERAL EXPRESS**
Marilyn's Patties
1717 Dutch Broadway
Elmont, NY 11003

**Re:   NOTICE OF TERMINATION OF FRANCHISE AGREEMENT**

Dear Ms. Bullock:

Please be advised that this law firm represents Golden Krust Franchising, Inc., the Franchisor under that certain Franchise Agreement dated March 10, 2006.

Golden Krust has advised us that they have recently learned that you having been selling a competitor's patties and related products at your Golden Krust Caribbean Bakery and Grill and that you have also mislabeled those food products by packaging or wrapping them in Golden Krust branded packaging. The sale of non-golden Krust Patties at a Golden Krust Restaurant is a material and flagrant violation of your Franchise Agreement .Additionally, your misrepresenting the patties you are selling to your patrons as "Golden Krust Patties" when they in fact are made by a Golden Krust competitor is not only a material breach of your Franchise Agreement but also a violation of law.

**Accordingly, your Golden Krust Franchise Agreement and all of your rights thereunder are hereby terminated effective immediately.**

Pursuant to Paragraphs XIV and XV of the Franchise Agreement, you are hereby notified that you must immediately discontinue all use of trade names, trademarks, service marks, signs, forms of advertising and indicia of any association with Golden Krust or of your operation of a Golden Krust Restaurant. You are required pursuant to your continuing obligations under the Franchise Agreement, and demand is hereby made, that you return to Franchisor all documents, instructions, operating manuals, display items, and like material belonging to Franchisor.

CORBALLY, GARTLAND AND RAPPLEYEA LLP

Second, you should refer to Paragraph XV of the Franchise Agreement. Paragraph XV sets forth many of the requirements which survive termination of the Franchise Agreement and govern your post-termination actions. Without limiting the generality of your contractual obligations, you are required immediately to take the following actions:

1. You shall immediately cease representing to the public that your business is or was operated or in any way connected with Franchisor or the Golden Krust System (as defined in the Franchise Agreement) or continue to hold yourself out as a present or former franchisee of Franchisor.

2. You shall immediately pay all sums owing to Franchisor if you have not already done so. Attached to this Notice is an itemization of the monies that you currently owe to Golden Krust.

3. You should return to Franchisor the Franchise Operations Manual, and any other manuals or documents and all copies thereof which were loaned to you by Franchisor during the term of the Franchise Agreement.

4. You are required immediately to notify your local telephone company and all publishers of phone directories which identify the Franchised Business and incorporate any of the Golden Krust Marks belonging to Franchisor to delete all such references from any future editions of such directories. Please copy and send to us immediately those pages of all white and yellow pages phone listings which currently list the Franchised Business.

5. You are required immediately to cease using in advertising any trademarks or serviced marks associated with the Golden Krust System including, without limitation, exterior and interior signage, all printed materials, brochures and other literature prepared by Franchisor.

6. You should immediately undertake to remove or repaint any distinguishing architectural features or color schemes at the Unit which are identified with the Franchisor and its Licensed Marks ("trade dress") including, without limitation, the following: Awnings and Menu Boards.

7. If you are currently doing so, you must have your employees stop answering the telephone using any reference to Golden Krust.

Finally, you are reminded that the Franchise Agreement contains other post-termination obligations in Paragraph XV. These include, without limitation the obligation not to operate a business at or within a 10 mile radius of your former Golden Krust Restaurant or any other Golden Krust Restaurant that offers or sells similar products for a period of two (2) years after termination of the Franchise Agreement and the obligation not to disclose Franchisor's trade secrets or proprietary information as set forth in the Franchise Agreement or as may otherwise be prohibited by law.

# CORBALLY GARTLAND AND RAPPLEYEA LLP

The enumeration herein of grounds for default and termination shall not constitute a waiver by the Franchisor as to the existence of other grounds for default or termination under the Franchise Agreement. The termination of your Franchise Agreement is not intended to restrict the right of the Franchisor to institute appropriate proceedings at law or on equity to obtain relief resulting from your material breach of the Franchise Agreement.

The foregoing enumeration of your duties and obligations following termination is not intended to be and should not be construed as an exclusive listing of such post-termination obligations. Franchisor expects you to comply fully with all of the post-termination provisions of the Franchise Agreement and demands that you do so. If you have any questions in this regard, please contact this office.

Very truly yours

Corbally Gartland and Rappleyea, LLP

Vincent L. DeBiase

VLD/rew

cc:     Golden Krust Franchising

**VIA FEDERAL EXPRESS**
Marilyn Bullock
32-38 215th Place
Bayside, NY 11361

**VIA FEDERAL EXPRESS**
Golden Krust
c/o Marilyn Bullock
90-58 Sutphin Boulevard
Jamaica, NY 11435