CV 13 - 2241

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

MANN. M.J.

```
------------------------------------------------X
GOLDEN KRUST PATTIES, INC.,                     )
GOLDEN KRUST FRANCHISNG, INC.,                  )
d/b/a GOLDEN KRUST CARIBBEAN                     )
BAKERY & GRILL,                                 )
                                                )    Civil Action No.:
                Plaintiffs,                     )
v.                                              )
                                                )
MARILYIN BULLOCK and                            )
MARILYN'S PATTIES, INC., d/b/a                  )
GOLDEN KRUST BAKERY                             )
                                                )
                Defendants.                     )
------------------------------------------------X
```

---

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMNARY INJUNCTION

---

**CORBALLY, GARTLAND AND RAPPLEYEA, LLP**
Attorneys for Plaintiffs
Office and P.O. Address
35 Market Street
Poughkeepsie, NY 12601
(845) 454-1110

William W. Frame, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT     1

STATEMENT OF FACTS     3

ARGUMENT     6

POINT 1     6

GOLDEN KRUST IS ENTITLED TO INJUNCTIVE RELIEF WITH
RESPECT TO ITS CLAIM OF TRADEMARK INFRINGEMENT     6

A.     Golden Krust is Likely to Succeed on the Merits     6

    1.     Golden Krust's Likelihood of
Success Under Section 32 of the Lanham Act     7

       i.     Golden Krust Has Enforceable Trademarks     7

       ii.     The Defendants' Acts Infringe Upon the
Golden Krust Trademarks and Cause a
Likelihood of Confusion     7

    2.     Golden Krust's Likelihood of Success
Under Section 43(a) and (c) of the Lanham Act     12

       i.     The Defendant's False and Misleading
Description or Representation of Fact
As Prohibited by Section 43(a)     12

       ii.     The Defendants' False Designation of
Origin of the Golden Krust Trademarks
Is Prohibited by Section 43(a)     13

       iii.     The Defendants' Dilution and Tarnishment
of the Golden Krust Trademarks as
Prohibited by Section 43(c)     13

B.     Golden Krust Will Suffer Irreparable Harm in the
Absence of An Injunction     14

C.     The Threatened Injury to Golden Krust Outweighs Any
Injury that the Requested Injunction will Inflict on the
Defendants     15

D.     The Public Will Not Be Harmed By An Injunction Prohibiting
the Defendants' Use of the Golden Krust Trademarks     17

POINT II     18

GOLDEN KRUST IS ENTITLED TO INJUNCTIVE RELIEF
WITH RESPECT TO ITS CLAIM OF VIOLATION OF THE
COVENANT NOT TO COMPETE     18

A.     Golden Krust is Likely to Succeed on the Merits     18

B.     Golden Krust Will be Irreparably Harmed Absent
Injunctive Relief     19

C.     A Balance of the Hardships Favors Golden Krust     22

D.     The Public Will Not Be An Injunction Enforcing Golden
Krusts' Rights Under the Covenant Not to Compete     23

CONCLUSION     24

## TABLE OF AUTHORITIES

**Page**

### STATUTES

| | |
|---|---|
| 15 U.S.C. §1051 | 6, 7, 11, 12, 13, 14 |
| 15 U.S.C. §1065 | 7 |
| 15 U.S.C. §1111 | 7 |
| 15 U.S.C. §1115 | 7 |
| F.R.C.P. 65 | 1, 6 |
| Local Rule 6.1 | 1 |

### CASES

| | |
|---|---|
| Arrow Fastener Co., Inc. v. Stanley Works<br>59 F.3d 384 (2d Cir. 1995) | 9, 10 |
| Brennan's Inc. v. Brennan's Restaurant, Inc.<br>360 F.3d 125 (2d Cir. 2004) | 14 |
| Brenntag International Chemicals, Inc. v. Bank of India<br>15 F.3d 245 (2d. Cir. 1999) | 20 |
| Carvel Corp. v. Eisenberg<br>692 F.Supp. 182 (S.D.N.Y. 1988) | 18, 19 |
| Century 21 Real Estate v. Raritan Bay Realty, LTD<br>2007 U.S. Dist. Lexis 34108 (E.D.N.Y. 2007) | 7, 14 |
| Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc.<br>832 F.2d 1317 (2d Cir. 1987) | 9 |
| Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.<br>604 F.2d 200 (2d Cir. 1979) | 7, 11 |

**Dick Laureyssens v. Idea Group, Inc.**
964 F.2d 131 (2d Cir. 1992)                                      6

**Dunkin' Donuts Inc. v. Albireh Donuts, Inc.**
96 F. Supp. 2d 146 (N.D.N.Y. 2000)                             13

**Dunkin Donuts, Inc. v. N. Queens Bakery, Inc.**
16 F. Supp. 2d 31 (E.D.N.Y.2001)                   8, 12, 13, 16, 22

**Ecolab, Inc. v. K.P. Laundry Machinery, Inc.**
656 F. Supp. 894 (S.D.N.Y. 1987)                               21

**Estee Lauder Cos. v. Batra**
430 F.Supp.2d 158 (S.D.N.Y. 2006)                              21

**Federal Express Corp. v. Federal Espresso, Inc.**
201 F.3d 168 (2d Cir. 2000)                                    14

**Genesee Brewing Co. v. Stroh Brewing Co.**
124 F.3d 137 (2d Cir. 1997)                                    14

**Innoviant Pharmacy, Inc. v. Morganstern**
390 F.Supp.2d 179 (N.D.N.Y. 2005)                              21

**Ivy Mar Co. v. C. R. Seasons, Ltd.**
907 F.Supp. 547 (E.D.N.Y. 1995)                                21

**Kamerling v. Massanari**
295 F. 3d 206 (2d. Cir. 2002)                                  20

**Lang v. Ret. Living Pub'g Co., Inc.**
949 F.2d 576 (2d Cir. 1991)                                    10

**Malletier v. Burlington Coat Factory Warehouse Corp.**
426 F.3d 532 (2d Cir. 2005)                                     9

**McDonald's Corp. v. Robertson**
147 F. 3d 1301 (11th Cir. 1998)                              13

**McGregor-Doniger Inc. v. Drizzle Inc.**
599 F.2d 1126 (2d Cir. 1979)                                 9, 11

**N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC**
293 F.3d 550 (2d Cir. 2002)                                     9

iv

Polaroid Corp. v. Polarad Electronics Corp.
287 F.2d 492 (2d Cir. 1961)                                                8

Register.com Inc. v. Verio, Inc.
356 F.3d 393 (2d Cir. 2004)                                             6, 20

S&R Corp. v. Jiffy Lube Int'l, Inc.
968 F.2d 371 (3d Cir. 1992)                                                8

Star Industries v. Bacardi and Co.
412 F.3d 373 (2d Cir. 2005)                                                7

Stratharos v. New York City Taxi and Limousine Comm'n
198 F.3d 317 (2d Cir. 1999)                                                6

Sutton Cosmetics, Inc. v. Lander Co.
455 F.2d 285 (2d Cir. 1972)                                               12

Tecnimed SRL v. Kidz-Med, Inc.
2011 U.S. Dist, LEXIS 4352 (S.D.N.Y. 2011)                                 8

The New York City Triathlon, LLC. v. NYC Triathlon Club, Inc.
704 F. Supp 2d 305 (S.D.N.Y. 2010).                                    15, 16

Ticor Title Ins. Co. v. Cohen
173 F.3d 63, 69 (2d. Cir. 1999)                                           20

Warner-Lambert Co. v. Northside Dev. Corp.
86 F.3d 3 (2d Cir. 1996)                                                6, 14

W.W.W. Pharm. Co., Inc. v. Gillette Co.
984 F.2d 567, 575 (2d Cir. 1993)                                          11

Xerox Co. v. Neises
31 A.D.2d 195 (1st. Dept. 1968)                                        18, 19

## PUBLICATIONS

4 J. Thomas McCarthy,
McCarthy on Trademarks and Unfair Competition, §24.88 (4th Ed. 2002)      12

## PRELIMINARY STATEMENT

The Plaintiffs, GOLDEN KRUST PATTIES, INC. and GOLDEN KRUST FRANCHISING INC., d/b/a GOLDEN KRUST CARIBBEAN BAKERY & GRILL (hereinafter, collectively, "Golden Krust" or the "Plaintiffs"), respectfully submit this memorandum of law in support of their application for a temporary restraining order and preliminary injunction, pursuant to Rule 65 (b) of the Federal Rules of Civil Procedure and Local Rule 6.1 (d), which seeks to enjoin and restrain the Defendants, MARILYN BULLOCK and MARILYN'S PATTIES, INC., d/b/a GOLDEN KRUST BAKERY (hereinafter, collectively, the "Defendants"), their officers, agents, servants, employees, attorneys, parents, subsidiaries, and related companies, and all persons acting for, with, by, through or under them, from:

      a.    using or displaying in any manner the registered trademarks of the Plaintiff, GOLDEN KRUST PATTIES, INC., specifically: (1) GOLDEN KRUST ®; (2) GOLDEN KRUST CARIBBEAN BAKERY AND GRILL ®, (3) GOLDEN KRUST PATTIES ®, related design marks or any colorable imitation thereof at 1717 Dutch Broadway, Elmont, New York 11003, or at any other location;

      b.    using in any manner the Golden Krust name or Golden Krust Trademarks in connection with the Defendants' sale of Caribbean-styled food products or any related products in such a manner that is likely to create the erroneous belief that said products are authorized by, sponsored by, franchised by, or some way associated with the Plaintiffs;

      c.    creating, displaying, erecting or printing any signage at or on any building or establishment which signage incorporates the Golden Krust name and/or Golden Krust Trademarks;

1

       d.     using, disseminating or distributing any advertising, menus or other promotional materials that bear the Golden Krust name and/or Golden Krust Trademarks or whose appearance so resembles the Plaintiffs' intellectual property that it is likely to create confusion, mistake or deception among the general public; and

       e.     otherwise engaging in any other acts or conducts which would cause consumers to erroneously believe that the Defendants' goods or services are somehow sponsored by, authorized by, franchised or licensed or in any other way associated with the Plaintiffs and/or Golden Krust.

       f.     opening, operating, owning, managing, associating with, or otherwise controlling any restaurant or food service business at 1717 Dutch Broadway, Elmont, New York 11003;

       g.     opening, operating, owning, managing, associating with, or otherwise controlling any restaurant or food service business within ten (10) miles of the Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003; and

       h.     opening, operating, owning, managing, associating with, or otherwise controlling any restaurant or food service business within five (5) miles of any other Golden Krust Caribbean Bakery & Grill franchise.

Golden Krust respectfully refers the Court to the accompanying Affidavit of Lorraine Morrison (hereinafter the "Morrison Affidavit"), the accompanying Affidavit of Stephen Ament (hereinafter the "Ament Affidavit"), the Affirmation of William W. Frame (hereinafter the "Frame Affirmation"), and its Complaint for a full recitation of the facts and circumstances underlying this application.

## STATEMENT OF FACTS

Golden Krust is a manufacturer and distributor of Caribbean-styled food products, the national franchisor of Golden Krust Caribbean Bakery & Grill, and the owner of a unique and proprietary system (hereinafter the "Golden Krust System") designed for the development, opening, and operation of said Golden Krust Caribbean Bakery & Grill.  See, Morrison Affidavit, ¶ 3.  In fact, Golden Krust is the largest Caribbean franchise in the United States with over one-hundred and twenty (120) franchises nationwide.  Golden Krust's Caribbean-styled food products can be found in its franchises, supermarkets, hospitals, schools, correctional and food service facilities, sporting facilities, other retail outlets, and at special outdoor events throughout the United States. See, Id., ¶ 4.

The Plaintiff, GOLDEN KRUST PATTIES, INC. (hereinafter, individually, "Golden Krust Patties"), is the owner of the following trademarks (hereinafter the "Golden Krust Trademarks"), which are duly registered on the principal register of the United States Patent and Trademark Office: (a) GOLDEN KRUST bearing Serial # 78444256; (b) GOLDEN KRUST CARIBBEAN BAKERY & GRILL bearing Serial # 78424848, and (c) GOLDEN KRUST PATTIES, bearing Serial #76340524. The Plaintiff, GOLDEN KRUST FRANCHISING, INC., d/b/a GOLDEN KRUST CARIBBEAN BAKERY & GRILL (hereinafter, individually, "Golden Krust Franchising"), is the exclusive world-wide licensee of all of the Golden Krust Trademarks pursuant to a licensing agreement with Golden Krust Patties.

On or about March 10, 2006, Golden Krust Franchising entered into a written franchise agreement (hereinafter the "Franchise Agreement") with the Defendants, under which the Defendants were authorized to operate a Golden Krust Caribbean Bakery & Grill franchise restaurant located at 1717 Dutch Broadway, Elmont, New York 11003.  See, Id., **Exhibit A**.

3

Pursuant to the Franchise Agreement, the Defendants were authorized to use the Golden Krust name, Golden Krust Trademarks, and Golden Krust System in the development, promotion, and operation of their Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003.   See, Id., **Exhibit A**.   Pursuant to the Franchise Agreement, the Defendants were also required to comply with the Golden Krust System, including, but not limited to, selling exclusively products approved by and manufactured by the Plaintiffs. See, Id., **Exhibit A**, ¶VIII.

Pursuant to the Franchise Agreement, the Defendants were prohibited from engaging in any dishonest or unethical conduct, which may adversely affect the reputation of Golden Krust name, the Golden Krust Trademarks, or the Golden Krust System. See, Id., **Exhibit A**, ¶XIII. Any violation of the aforementioned provisions of the Franchise Agreement authorized Golden Krust to immediately terminate said Agreement and the Defendants' rights thereunder.   See, Id., **Exhibit A**, ¶XIII.  Upon any such termination of the Franchise Agreement, the Defendants were prohibited from using the Golden Krust System or displaying the Golden Krust name and/or Golden Krust Trademarks.  See, Id., **Exhibit A**, ¶XIV.

As partial consideration for the Defendants' rights thereunder, the Franchise Agreement contained a Covenant Not to Compete (hereinafter the "Covenant Not to Compete"), under which the Defendants were forbidden to have any direct or indirect interest in any bakery, grill, restaurant, or food service business within ten (10) miles of the Golden Krust Caribbean Bakery & Grill located at 1717 Dutch Broadway, Elmont, New York 11003, or within five (5) miles of any other Golden Krust Caribbean Bakery & Grill.  The Covenant Not to Compete was and still is applicable during the term of the Franchise Agreement and for a period of two (2) years following the termination of the Franchise Agreement. See, Id., **Exhibit A**, ¶XV.

4

On or about April 1, 2013, the Plaintiffs discovered that the Defendants were selling a competitor's products at its Golden Krust franchise in Elmont, New York.  See, Ament Affidavit, ¶¶4-5.  Even more alarming, the Defendants were then placing the competitor's product into packaging bearing the Golden Krust Trademarks, giving customers the false belief that they were purchasing authentic Golden Krust products.  See, Id., ¶6.  As a result, the Defendants were in material breach of the Franchise Agreement.

On April 2, 2013, as a result of the Defendants' blatant and material breaches of the Franchise Agreement, the Plaintiffs notified the Defendants that the Franchise Agreement was terminated effective immediately pursuant to the terms of said Agreement.  See, Morrison Affidavit, **Exhibit B**.  The aforementioned notice of termination demanded that the Defendants immediately cease and desist the operation of its Golden Krust franchise located in Elmont, New York and immediately remove from its Golden Krust franchise location any advertising, signage, or structure that featured or contained the Golden Krust name or the Golden Krust Trademarks. See, Id., **Exhibit B**.

The notice of termination also reminded the Defendants of the restrictions set forth in the Covenant Not to Compete.  See, Id., **Exhibit B**.  Notwithstanding the aforementioned notice of termination, the Defendants continue to defiantly operate their Golden Krust franchise in Elmont, New York and continue to use the Golden Krust name, the Golden Krust Trademarks, and the Golden Krust System.  See, Ament Affidavit, **Exhibit 3**.  Based upon the arguments set forth below, the Plaintiffs are entitled to the injunctive relief it seeks herein.

5

## ARGUMENT

### POINT I

### GOLDEN KRUST IS ENTITLED TO INJUNCTIVE RELIEF
### WITH RESPECT TO ITS CLAIM OF TRADEMARK INFRINGEMENT

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and injunctive relief must establish that: (a) it is likely to succeed on the merits; (b) it has no adequate remedy at law and it will suffer irreparable harm if the injunction is not issued; (c) the irreparable harm it will suffer if the injunction is not granted is greater than the irreparable harm the defendant will suffer in the injunction is granted; and (d) an injunction will not harm the public interest. See, Register.com Inc. v. Verio, Inc., 356 F.3d 393 (2d Cir. 2004); Stratharos v. New York City Taxi and Limousine Comm'n, 198 F.3d 317 (2d Cir. 1999); Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3 (2d Cir. 1996); Dick Laureyssens v. Idea Group, Inc., 964 F.2d 131 (2d Cir. 1992).

### A.   Golden Krust is Likely to Succeed on the Merits

The Defendants' continued use of the Golden Krust Trademarks without authorization and after their rights to use said Trademarks have been terminated constitutes unlawful infringement of the Golden Krust Trademarks and, therefore, violates Sections 32 and 43(a) and (c) of the Lanham Act.  A likelihood of success under any of these statutes would require the issuance of the injunction requested herein.  However, as is set forth herein, Golden Krust can establish a likelihood of success as to all three (3) referenced statutes.  As a result, Golden Krust is likely to succeed on its claims that the Defendants violated their intellectual property rights under the Lanham Act.

1. **Golden Krust's Likelihood of**
   **Success Under Section 32 of the Lanham Act**

To succeed under Section 32 of the Lanham Act, Golden Krust must demonstrate that: (1) it has protectable trademarks; and (2) the Defendants' use of the Marks creates a likelihood of confusion concerning the origin of the goods or services.  See, <u>Star Industries v. Bacardi and Co.</u>, 412 F.3d 373 (2d Cir. 2005); <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.</u>, 604 F.2d 200 (2d Cir. 1979).

### i.  **Golden Krust Has Enforceable Trademarks**.

The Golden Krust Trademarks are valid and legally protectable, given that the marks which the Defendants at bar are infringing have been registered on the principal register of the United States Patent and Trademark Office.  See, Complaint, **Exhibit A**.  Golden Krust has the exclusive right to use and to license the use of the name, design and logo for Golden Krust as well as the distinctive Golden Krust franchise system.  Golden Krust has continuously used each of the referenced trademarks since the date of their registration and each of these marks are in full force and effect pursuant to 15 U.S.C. §1065.  Golden Krust has given notice to the public of the registration of the golden Krust Trademarks as provided in 15 U.S.C. §1111.  Such registration is prima facie evidence of ownership of the marks and the exclusive right to their use. See, 15 U.S.C. §1115(a). As such, Golden Krust has enforceable trademarks.

### ii. **The Defendants' Acts Infringe Upon the**
**Golden Krust Trademarks and Cause a Likelihood of Confusion**

This Court has consistently held that an ex-franchisee's continued use of the trademarks of its previous franchisor, in of itself, creates the likelihood of confusion within the meaning of the Lanham Act.  See, <u>Century 21 Real Estate v. Raritan Bay Realty, LTD</u>, 2007 U.S. Dist. Lexis 34108 (E.D.N.Y. 2007).  Indeed, when a defendant is using the exact same trademark as the

7

complaining party, such as the Defendants herein, a likelihood of confusion is seemingly inevitable. See, Dunkin Donuts, Inc. v. N. Queens Bakery, Inc., 216 F. Supp. 2d 31 (E.D.N.Y.2001).

In fact, "cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are open and shut." Id., citing S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371 (3d Cir. 1992) (internal quotations omitted). The Defendants' status as a holdover franchisee makes the Second Circuit's eight-factor test set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961), not applicable. See, Id. Having said that, Golden Krust can satisfy the elements set forth in the Polaroid case in order to establish a likelihood of confusion.

The Second Circuit has set forth the following factors in connection with claims of trademark infringement for determining likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two products; (3) the proximity of the products; (4) the likelihood that the owner will bridge the gap; (5) evidence of actual confusion; (6) defendant's good faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of consumers. See, Polaroid, 287 F.2d at 495.

Application of the Polaroid test need not be rigidly applied and, while no single factor is determinative, the first three (3) factors are generally considered the most significant. See, Tecnimed SRL v. Kidz-Med, Inc., 2011 U.S. Dist, LEXIS 4352 (S.D.N.Y. 2011). As an initial matter, the Golden Krust Trademarks are very strong as the Golden Krust brand has become the nation's leading Caribbean-styled quick service restaurant franchise. It is axiomatic, that the commercial success of a product reinforces the strength of the trademark for which an owner

seeks protection. See, <u>Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc.</u>, 832 F.2d 1317 (2d Cir. 1987).

In determining the similarity of the marks, courts must analyze the marks' overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers. See, <u>Malletier v. Burlington Coat Factory Warehouse Corp.</u>, 426 F.3d 532 (2d Cir. 2005). Here, the Defendants are unlawfully using the exact same trademarks owned by the Plaintiffs. This unauthorized use falsely portrays the Defendants as being affiliated or associated with Golden Krust products. Furthermore, the Defendants' continuing display of the Golden Krust Trademarks creates a significant risk of consumer confusion and deception in that consumers are likely to be deceived into believing that they are purchasing authentic Golden Krust products from the Defendants.

When determining product proximity and the "bridging the gap" factors, courts are concerned with the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves. See, <u>Arrow Fastener Co., Inc. v. Stanley Works</u>, 59 F.3d 384 (2d Cir. 1995). Selling different services or targeting a different market does not disprove a likelihood of confusion, because "the concern is not direct diversion of purchasers but indirect harm through loss of goodwill or tarnishment of reputation." See, <u>McGregor-Doniger Inc. v. Drizzle Inc.</u>, 599 F.2d 1126 (2d Cir. 1979).

A court may find a likelihood of confusion where "consumers are likely to believe that the challenged use of a trademark is somehow sponsored, endorsed, or authorized by its owner." See, <u>N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC</u>, 293 F.3d 550 (2d Cir. 2002). As stated above, based upon the Defendants' unauthorized use of the Golden Krust Trademarks, it is

highly likely that consumers will, in fact, believe they are purchasing authentic Golden Krust products.

This, in turn, could lead to the loss of goodwill and tarnishment of Golden Krust's reputation if the products sold by the Defendants, which are not manufactured by Golden Krust, are not the same premium Caribbean-styled food products, which have earned Golden Krust wide acclaim as the leading Caribbean-styled food franchise. Indeed, the fact that Golden Krust has no control over the product bearing its federally protected trademarks warrants injunctive relief in of itself.

When determining whether an infringer is acting in bad faith, courts look to whether the defendant adopted its mark with the "intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." See, Lang v. Ret. Living Pub'g Co., Inc., 949 F.2d 576 (2d Cir. 1991). In the present case, the Defendants undoubtedly intended to capitalize on Golden Krust's reputation and acting in bad faith by virtue of their unauthorized use of the Golden Krust Trademarks despite the fact that their rights to do so have been terminated. This is further evidenced by their blatant disregard of Golden Krust's demand that they cease and desist any unlawful use of said Trademarks. Thus, it is clear that the Defendants are acting in bad faith.

When deciding how the quality of a defendant's product affects consumer confusion, courts are primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality. See, Arrow Fastener Co. v. Stanley Works, 59 F.3d 384 (2d Cir. 1995). The concern is "not so much with the likelihood of confusion as with the likelihood of harm resulting from any such confusion." See, Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141 (2d Cir. 2003); Dallas Cowboys Cheerleaders, 604 F.2d

10

at 205 (the trademark laws are designed not only to prevent consumer confusion but also the right of a trademark owner to control his product's reputation).   Here, Golden Krust has no control over the quality of the products being sold by the Defendants and, as a result, no control over customers' perception of the products purchased from the Defendants.   It is precisely this lack of quality control by Golden Krust that warrants injunctive relief.   Accordingly, this factor weighs in favor of finding a likelihood of confusion.

Finally, when determining how the sophistication of a consumer base affects the likelihood of confusion, courts should consider the "general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give."   See, W.W.W. Pharm. Co., Inc. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993).   However, even a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when the marks in question are nearly identical.   See, McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979).   As has been established, there is no discernable way that even the most sophisticated consumer could know that they were not purchasing authentic Golden Krust products due to the Defendants' blatant infringement of the Golden Krust Trademarks.

In summary, all of the Polaroid factors in this action weigh heavily in favor of Golden Krust, which overwhelmingly favors injunctive relief.   As a result of the foregoing, the Defendants' use of the Golden Krust Trademarks when selling inferior products from Golden Krust's competitor is likely to cause confusion amongst consumers concerning the origin of the company's mulch and, thus, Golden Krust is entitled to a temporary restraining order and preliminary injunction pursuant to its trademark infringement claims under §32 of the Lanham Act and its unfair competition claim under §43(a) of the Lanham Act.

2.    **Golden Krust's Likelihood of Success**
      **Under Section 43(a) and (c) of the Lanham Act.**

To establish a violation of Section 43(a) of the Lanham Act, Golden Krust must prove that the Defendants have either (1) given a false or misleading description of fact; (2) made a false or misleading representation of fact; or (3) falsely designated the origin of their services, any of which are likely to cause confusion or mistake as to source, sponsorship, affiliation, or approval.  Section 43(c) of the Lanham Act further prohibits a person from using another's famous mark so as to cause dilution of the distinctive quality of the mark.  See, Sutton Cosmetics, Inc. v. Lander Co., 455 F.2d 285 (2d Cir. 1972); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §24.88 (4th Ed. 2002).

i.    **The Defendant's False and Misleading Description or**
      **Representation of Fact as Prohibited by Section 43(a)**

The Franchise Agreement between Golden Krust and the Defendants was terminated effective April 2, 2013.  The terms of the Franchise Agreement required the Defendants to immediately cease and desist the use of the Golden Krust Trademarks, trade dress and other confidential or proprietary information belonging to Golden Krust.  Simply put, the continuing use of the Golden Krust Trademarks by the Defendants is unauthorized. The Defendants are no longer franchisees of Golden Krust and have been notified that they are not authorized to use the Golden Krust Trademarks but continue to do so.  This unauthorized use falsely portrays the Defendants as being affiliated with Golden Krust and Golden Krust products.  Furthermore, The Defendants continuing display of the Golden Krust Trademarks creates a significant risk of consumer confusion and deception whereupon consumers will be deceived into believing that they are patronizing an authorized Golden Krust franchise.  See, Dunkin Donuts, Inc. v. N. Queens Bakery, Inc., 216 F. Supp. 2d at 44 (defendants franchisees' use of marks previously

12

used while properly franchised would generate confusion to customers as to the source of defendants' goods and services.)

### ii.   The Defendants' False Designation of Origin of the Golden Krust Trademarks is Prohibited by Section 43(a)

The Defendants' continued use of the Golden Krust Trademarks constitutes nothing less than a misrepresentation that the Defendants are affiliated with Golden Krust, which falsely designates the origin of their products and services as associated with Golden Krust. Given the likelihood of confusion, and the falsity of the Defendants' designation of their products, the facts before this Court establish a violation of Section 43(a) of Lanham Act.  See, Dunkin Donuts, Inc. v. N. Queens Bakery, Inc., 216 F. Supp. 2d 31 (E.D.N.Y. 2001).

### iii.   The Defendants' Dilution and Tarnishment of the Golden Krust Trademarks as Prohibited by Section 43(c)

Finally, Golden Krust is likely to prevail on its claim under Section 43 (c) of the Lanham Act since the Defendants' continued and defiant association of the famous Golden Krust Trademarks with their restaurant will tarnish Golden Krust's goodwill and business reputation. Tarnishment can occur when the trademark in question is linked to the goods and services of inferior quality.  The Defendants are not selling Golden Krust's premium Caribbean-styled food products but, in all likelihood, inferior products, which the Defendants intend to "palm off" as authentically Golden Krust.  Like other franchisors, after terminating a franchisee, Golden Krust is powerless to demand and ensure the continued quality of the ex-franchisee's operation and products.   See, Dunkin' Donuts Inc. v. Albireh Donuts, Inc., 96 F. Supp. 2d 146 (N.D.N.Y. 2000), citing McDonald's Corp. v. Robertson, 147 F. 3d 1301 (11th Cir. 1998).  (Damages to a business' goodwill as a result of unauthorized trademark usage constitute irreparable harm).

13

Simply stated, the Franchise Agreement was terminated as a result of the Defendants' failure to perform its contractual obligations. Accordingly, the Defendants do not have any right to use the Golden Krust Trademarks. The Defendants' continued and defiant use of the Golden Krust Trademarks constitutes infringement in violation of federal trademark law as well as applicable state statutes. Consequently, Golden Krust meets and, in fact, exceeds, the standards for assessing the likelihood of success on the merits. As a result of the foregoing, Golden Krust has established a likelihood of success on the merits with respect to its claims for trademark infringement under Sections 32 and 43(a) and (c) of the Lanham Act.

**B.  Golden Krust Will Suffer Irreparable Harm in the Absence of An Injunction**

As the courts of this Circuit have long recognized, a trademark owner's lack of an adequate remedy at law to redress infringement is self-evident. Damages caused by trademark infringement are by their nature irreparable and are rarely, if ever, susceptible of adequate measurement for remedy at law. See, Century 21 Real Estate Inc. v. Raritan Bay Realty, Ltd., 2007 U.S. Dist. Lexis 34108 (E.D.N.Y. 2007); Warner-Lambert Co. v. Northside Dev. Co., 86 F.2d 3 (2d Cir. 1996). It is well settled in this Circuit that, in a trademark infringement case such as the case at bar, proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm. See, Brennan's Inc. v. Brennan's Restaurant, Inc., 360 F.3d 125 (2d Cir. 2004).

As such, the proof of a likelihood of confusion creates a presumption of irreparable harm. See, Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168 (2d Cir. 2000); Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137 (2d Cir. 1997) ("[T]he requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of

confusion (a requirement of both trademark infringement and unfair competition claims) establishes irreparable harm").

Additionally, and independently, a trademark owner's loss of goodwill and the ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. See, The New York City Triathlon, LLC. v. NYC Triathlon Club, Inc.,704 F. Supp 2d 305 (S.D.N.Y. 2010). In the present case, as stated, Golden Krust has no control over the products being sold by the Defendants under the Golden Krust moniker. In turn, the consumers who purchase the Defendants' likely inferior product will associate said product with the Golden Krust brand.

If the Defendants' inferior product tarnishes the Golden Krust brand due to its inferior quality, there is significant risk that Golden Krust's reputation will, in turn, be damaged. Indeed, this inability to control its reputation is the very definition of irreparable harm. As a result, absent the Court's equitable intervention, Golden Krust will be irreparably harmed by the Defendants' continuing infringement of the Golden Krust Trademarks and the Golden Krust brand.

**C.     The Threatened Injury to Golden Krust Outweighs Any
        Injury that the Requested Injunction will Inflict on the Defendants**

The threatened injury to Golden Krust and the Golden Krust brand far outweighs the potential for damage, if any, to the Defendants should the Court grant the requested preliminary injunction. Indeed, the balance of hardships tips decidedly in the favor of Golden Krust in light of the dangers posted to the public, which is being deceived into thinking they are purchasing authentic Golden Krust products, as well as the dangers to Golden Krust's reputation and goodwill. Where there is a strong likelihood of confusion as in this case, the immediate and irreparable harm to a plaintiff resulting from the continuation of a defendant's unlawful acts far

15

exceed any harm to any such defendant. See, <u>The New York City Triathlon, LLC</u>, 704 F. Supp 2d. at 344.

The Defendants' continued use of the Golden Krust Trademarks without authorization causes severe injury to Golden Krust that will continue absent immediate injunctive relief. That includes the loss of valuable rights under the Federal Trademark Act. Golden Krust has invested heavily in the Golden Krust Trademarks by advertising and promoting its service marks and trade names, and by maintaining system standards for facilities associated with the marks. The Defendants' misappropriation of the Golden Krust Trademarks threatens Golden Krust with the loss and tarnishment of its valuable rights.

By contract, any damages that may befall the Defendants are minimal, and can be compensated by money damages should they prevail at trial. It must be emphasized that injunctive relief will not prevent the Defendants from operating a business, either as an independent store or affiliated with another national franchise brand, although they will have to do so without deception of the public and in compliance with the parameters of the Covenant Not to Compete as addressed below.

It is well-settled that the equities favor granting preliminary injunctive relief where a former franchisee refuses to cease its use of the franchisor's trademarks. See, e.g., <u>Dunkin' Donuts, Inc. v. N. Queens Bakery, Inc.</u>, 216 F. Supp. 2d at 34. An injunction simply will enforce the remedy that defendants agreed was appropriate in the Franchise Agreement and will prohibit Defendants from the Golden Krust Trademarks. An injunction also will achieve the important goal of eliminating the deception of the consuming public caused by the Defendants' unauthorized use of the Golden Krust Trademarks.

**D.    The Public Will Not Be Harmed By An Injunction
        Prohibiting the Defendants' Use of the Golden Krust Trademarks**

Finally, the public interest weighs heavily in favor of the preliminary injunctive relief sought by Golden Krust.   Absent immediate injunctive relief, the Defendants are likely to continue to use the Golden Krust name and the Golden Krust Trademarks, holding themselves out to the public as an authorized Golden Krust franchisee, resulting in deception of the public. Here, the injury to the public is patently clear.   Unless the Defendants are enjoined from continued misuse of the Golden Krust's intellectual property rights, the public will continue to be confused and misled by their conduct.   Therefore, a temporary restraining order and a preliminary injunction will vindicate the public interest as expressed by Congress in the Lanham Act.

Indeed, the public has a strong interest in not being deceived and in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.   As such, the public will not be harmed by an injunction prohibiting the Defendants' use of the Golden Krust Trademarks.  Based upon the foregoing, Golden Krust has shown its entitlement to the injunctive relief it seeks herein.

## POINT II

## GOLDEN KRUST IS ENTITLED TO INJUNCTIVE RELIEF WITH RESPECT TO ITS CLAIM OF VIOLATION OF THE COVENANT NOT TO COMPETE

For many of the same reasons, Golden Krust is entitled to a temporary restraining order and preliminary injunction enforcing its rights under the Covenant Not to Compete contained in the Franchise Agreement.

### A.     Golden Krust is Likely to Succeed on the Merits

In its Complaint, Golden Krust seeks to enforce the Covenant Not to Compete against the Defendants, which is contained in the parties' Franchise Agreement.   Courts have long recognized the validity of restrictive covenants not to compete contained in franchise agreements so long as such covenants are: (1) reasonably related to legitimate interests of one of the parties; and (2) reasonable in length and geographical restrictions. See, e.g., Carvel Corp. v. Eisenberg, 692 F.Supp. 182 (S.D.N.Y. 1988).

In the present case, the Covenant Not to Compete contained in the parties' Franchise Agreement is reasonably related to the legitimate interests of Golden Krust in preventing its franchisees from acquiring the company's valuable trade secrets through the unauthorized operation of a Golden Krust Caribbean Bakery & Grill franchise. See, Id., Xerox Co. v. Neises, 31 A.D.2d 195 (1st. Dept. 1968).

The Covenant Not to Compete also serves the legitimate purpose of allowing Golden Krust to install another franchisee in the same vicinity. See, Carvel, supra. Otherwise, parties could gain valuable experience operating a franchise and then open and operate a competing location in the same close proximity, which, in essence, is exactly what the Defendants have done in the present case. Therefore, the Covenant Not to Compete is reasonably related to the legitimate interests of Golden Krust.

18

The Covenant Not to Compete is also reasonable in length and geographical restrictions and, thus, is valid and enforceable. Indeed, the Covenant Not to Compete only moderately restricts the Defendants from opening another restaurant. The Defendants are simply forbidden to have any direct or indirect interest in any bakery, grill, restaurant, or food service business within ten (10) miles of their Golden Krust Caribbean Bakery & Grill located in Elmont, New York, or within five (5) miles of any other Golden Krust Caribbean Bakery & Grill. See, Morrison Affidavit, **Exhibit A,** ¶ VII; ¶ XIV(D).

The restrictions in the Covenant Not to Compete apply for two (2) years following the termination and/or expiration of the parties' Franchise Agreement. Courts have upheld restrictive covenants with similar, or even longer, time restrictions. See, e.g., Carvel, supra (restrictive covenant, which prohibited franchisees from operating ice cream store for three years after franchise was terminated, was reasonably related to plaintiff's interest in protecting its know-how, so as to be enforceable); Xerox , supra (two year, entire trade restriction).

Based upon the foregoing, it is clear that the Covenant Not to Compete contained in the parties' Franchise Agreement is valid and enforceable in prohibiting the Defendants from the unauthorized ownership, operation, or control of its restaurant in Elmont, New York. Consequently, Golden Krust meets the standards for establishing the likelihood of success on the merits with respect to its claim that the Defendants violated the Covenant Not to Compete.

**B.      Golden Krust Will be Irreparably Harmed Absent Injunctive Relief**

It is clear that Golden Krust will suffer irreparable harm absent the requested injunctive relief if the Defendants are allowed to continue to own, operate, and otherwise control its restaurant in Elmont, New York while selling the products of a competitor of Golden Krust. To establish irreparable harm in this context, a party must show that there is a continuing harm that

19

cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. See, Kamerling v. Massanari, 295 F. 3d 206 (2d. Cir. 2002).

Irreparable harm is found where, but for the grant of equitable relief, there is a substantial chance that, upon final resolution of the action, the parties cannot be returned to positions they previously occupied. See, Brenntag International Chemicals, Inc. v. Bank of India, 175 F.3d 245 (2d. Cir. 1999). As was established above, it is well settled that a company's "loss of reputation, good will, and business opportunities" from a breach of a contract can constitute irreparable harm justifying a preliminary injunction. See, Regsiter.com, Inc. v. Verio, Inc., 356 F.3d 393 (2d. Cir. 2004) (affirming finding of irreparable harm where "district court found it impossible to estimate with any precision the amount of the monetary loss which ha[d] resulted and which would result in the future from the loss of [movant's] relationships with customers and co-brand partners by reason of" the defendant's actions).

Similarly, in the context of a breach of a covenant not to compete, irreparable harm to support an injunction was found because "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d. Cir. 1999).

In the present case, the Defendants acquired the refined trade secrets, knowledge, experience, and the Golden Krust System, from Golden Krust's decades of success. While the Defendants had been franchisees for nearly seven (7) years, they are now using Golden Krust's expertise in the ownership and operation of a restaurant in violation of the Covenant Not to Compete. In essence, the Defendants are reaping the benefits of the Golden Krust System, which

20

has made Golden Krust the largest Caribbean franchise in the country, while circumventing Golden Krust's contractual rights.

The irreparable harm to Golden Krust is apparent when considering the substantial risk that the Defendants are using Golden Krust's trade secrets and other sensitive information in the operation of its restaurant. Indeed, irreparable harm is presumed and automatic when there is a likelihood that trade secrets have been misappropriated, such as in the present case. See, Ivy Mar Co. v. C. R. Seasons, Ltd., 907 F.Supp. 547 (E.D.N.Y. 1995). Money damages simply cannot compensate Golden Krust for the loss of valuable insider information regarding the successful operation of a Caribbean restaurant as the use and disclosure of a party's confidential information constitute irreparable harm. See, Ecolab, Inc. v. K.P. Laundry Machinery, Inc., 656 F. Supp. 894 (S.D.N.Y. 1987) (loss of good will constitutes irreparable harm that cannot be compensated by money damages).

Even where a trade secret or other confidential information has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed, where, as in the present case, the plaintiff competes directly with the defendant and the defendant possesses highly confidential or technical knowledge concerning marketing strategies, or the like. See, Estee Lauder Cos. v. Batra, 430 F.Supp.2d 158 (S.D.N.Y. 2006).

When there is a valid and enforceable restrictive covenant and the disclosure of trade secrets is likely, such as in the present case, courts take a more relaxed approach to the irreparable harm inquiry, and in certain circumstances have found it appropriate to presume the existence of such an injury. See, Innoviant Pharmacy, Inc. v. Morganstern, 390 F.Supp.2d 179 (N.D.N.Y. 2005).

21

Allowing the Defendants to continue to own and operate a Caribbean-styled restaurant at the site of their terminated Golden Krust franchise not only violates Golden Krust's aforementioned contractual rights under the Franchise Agreement and Covenant Not to Compete, but also flies in the face of fairness and equity. It is nearly impossible to determine money damages that could compensate Golden Krust for the Defendants' blatant disregard for Golden Krust's rights under the Franchise Agreement. Therefore, Golden Krust will be irreparably harmed absent the requested injunctive relief.

**C.     A Balance of the Hardships Favors Golden Krust**

The threatened injury to Golden Krust as a result of the Defendants' unlawful ownership and operation of a Caribbean-styled restaurant far outweighs the potential for damage to the Defendants resulting from the requested temporary restraining order and preliminary injunction. The balance of hardships decidedly tips in the favor of Golden Krust in light of the dangers posted to the public and Golden Krust's name and good will. When there is a strong likelihood of confusion, as in this case, the balance of harms need weigh less in the plaintiff's favor. See, See, Dunkin Donuts Inc. v. N. Queens Bakery, Inc., 216 F. Supp. 2d at 44.

The Defendants' continued ownership, operation, and control of a Caribbean-styled restaurant at the site of their terminated Golden Krust franchise causes severe injury to Golden Krust that will continue absent immediate injunctive relief. That includes the loss of valuable rights under the Franchise Agreement (the Covenant Not to Compete), which provided Golden Krust with consideration for the Defendants' right to own and operate a Golden Krust franchise.

Moreover, Golden Krust has invested heavily in its franchise by advertising and promoting its trademarks and trade names, developing trade secrets, and establishing the Golden Krust System, all of which have made the company the largest Caribbean franchise in the

22

country.  The Defendants' likely misappropriation of Golden Krust' trade secrets and operating system threatens Golden Krust with the loss and tarnishment of its valuable rights.

By contrast, any damages that may befall the Defendants are minimal, and can be compensated by money damages should they prevail at trial.  This is especially true when considering that the Defendants have no legal right to own or operate a restaurant at the site in question.  An injunction simply will enforce the contractual provisions to which the parties agreed were appropriate in the Franchise Agreement and will achieve the important goal of eliminating the potential deception of the consuming public caused by the Defendants' operation of a competing restaurant, which is clearly violative of Golden Krust's rights.  Therefore, the threatened injury to Golden Krust absent the requested relief far outweighs any perceived injury to befall the Defendants if Golden Krust's application is granted.

**D.      The Public Will Not Be Harmed By An Injunction
Enforcing Golden Krust's Right Under the Covenant Not to Compete**

Finally, the public interest weighs heavily in favor of the preliminary injunctive relief sought by Golden Krust.  For many of the same reasons as set forth above, the Defendants are likely to continue to use the Golden Krust name, the Golden Krust Trademarks, and the trade secrets of Golden Krust absent an injunction.  Unless the Defendants are enjoined from continued misuse of the Golden Krust's intellectual property rights, the public will continue to be confused and misled by their conduct.  Also, there is substantial risk that the public will be led to believe that the Defendants are still associated with Golden Krust since they operated as a Golden Krust franchise for nearly seven (7) years.  Therefore, a temporary restraining order and a preliminary injunction will vindicate the parties' contractual rights as set forth in the Franchise Agreement and protect the public's interests.

23

## CONCLUSION

Accordingly, for the reasons set forth above, Golden Krust respectfully requests that this

Court grants its application for a temporary restraining order and a preliminary injunction in its

entirety, together with such other and further relief as this Court deems just and proper.

Dated: Poughkeepsie, New York
      April 11, 2013

**CORBALLY, GARTLAND and RAPPLEYEA, LLP**

By: _____
       Vincent L. DeBiase (VD9716)
       William W. Frame (WF9371)
       Attorneys for Plaintiffs
       35 Market Street
       Poughkeepsie, NY  12601
       (845) 454-1110

24